UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| APEX, LLC; APEX AT HOME, LLC,<br>Plaintiffs,<br>v.<br>24 HOUR FITNESS USA, INC.<br>Defendant. | CA# 08-169 ML |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT 24 HOUR FITNESS' MOTION TO DISMISS, OR ALTERNATIVELY, STAY PROCEEDINGS PURSUANT TO RULE 12(B)(3) AND 28 U.S.C. § 1406(a)**

CHISHOLM CHISHOLM & KILPATRICK LLP
J. Scott Kilpatrick
One Turks Head Place, Ste. 1313
Providence, RI 02903
Telephone (401) 331-6300
Facsimile (401) 421-3185
jskilpatrick@cck-law.com

Of Counsel:
MANATT, PHELPS & PHILLIPS, LLP
Susan E. Hollander
Britt L. Anderson
Christian E. Baker
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone (650) 812-1300
Facsimile: (650) 213-0260

*Attorneys for Defendant 24 Hour Fitness USA, Inc.*

## I. SUMMARY OF MOTION

This case is a second-filed action asserting federal and state law trademark infringement and closely related claims (the "Action"). It was filed thirty-nine days after 24 Hour Fitness USA, Inc. ("24 Hour Fitness") initiated an action in the Northern District of California regarding the identical trademarks (the "California Action") that are the subject of the instant Action. The law is clear that this second-filed action is improper and should be dismissed, or at a minimum, stayed pending resolution of the California Action. At a minimum, this action should be stayed to allow the California court to determine whether the litigation should proceed in the original forum in California or in the second forum of Rhode Island is appropriate. In fact, the overwhelming likelihood is that the suit pending in California court will adjudicate *every issue* raised in this second-filed suit, because parties and claims are essentially identical in the two suits. Moreover, no exceptions to the first-to-file rule are met. Thus, this action should be dismissed, or alternatively, stayed pending the resolution of the California Action.

## II. BRIEF FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

24 Hour Fitness is a premier chain of health and fitness clubs. (Anderson Decl, ¶ 5, Exh. B (First Amended Complaint Filed in Northern District of California) (hereinafter, referred to as the "California Complaint"), ¶ 8.)[1] Founded in 1983, its mission is to enhance people's lifestyles through fitness and regular exercise. (*Id.*) Through its Apex Fitness Group business, 24 Hour Fitness also provides cutting-edge integrated fitness and nutrition programs and products under distributorships offered to health and fitness clubs throughout the United States. (*Id.*, ¶ 9.) 24 Hour Fitness has offered its distributorships and related goods and services in the health and fitness field under numerous APEX trademarks since at least as early as 1994, including:

[1] The Declaration of Britt L. Anderson, filed herewith, is referred to as "Anderson Decl." hereafter.

| Mark | Reg. / App. No. | Goods/Services |
|---|---|---|
| APEX FIT (Stylized) | 3,045,062 | Class 5: Nutritional products, namely nutritional supplements and nutritionally fortified beverages; dietary supplements in the nature of nutritional bars and cookies; food supplements; meal replacement and dietary supplement drink mixes and powders; nutritional drink mix or powder for use as a meal replacement; vitamins. |
| APEX LEAN (Stylized) | 3,034,722 | Class 5: Nutritional products, namely nutritional supplements and nutritionally fortified beverages; dietary supplements in the nature of nutritional bars and cookies; food supplements; meal replacement and dietary supplement drink mixes and powders; nutritional drink mix or powder for use as a meal replacement; vitamins. |
| APEX FIX (Stylized) | 3,004,281 | Class 29: Food products, namely soy based food bars and cookies. |
| APEX FIX (Stylized) | 3,004,280 | Class 30: Food products, namely grain based food bars and cookies. |
| APEX MAX (Stylized) | 2,997,642 | Class 5: Nutritional products, namely nutritional supplements and nutritionally fortified beverages; dietary supplements in the nature of nutritional bars and cookies; food supplements; meal replacement and dietary supplement drink mixes and powders; nutritional drink mix or powder for use as a meal replacement; vitamins. |
| APEX & Design | 2,936,205 | Class 5: Nutritional and food supplements; vitamins and minerals; vitamin and mineral supplements<br>Class 9: Audio and visual recordings, namely, pre-recorded cassettes, videos, DVDs, and CD-ROMs in the field of health, fitness, or nutrition<br>Class 16: Printed matter, namely books, instruction manuals, periodicals, brochures, and magazines in the field of health, fitness, or nutrition<br>Class 35: Distributorship featuring vitamins & fitness programs<br>Class 41: Instruction and training services in the field of fitness and nutrition<br>Class 44: Providing information in the field of nutrition and fitness |
| APEX FITNESS GROUP (and Star Person Design) | 2,703,428 | Class 35: Distributorships featuring vitamins and fitness programs in the form of licensed software, videotapes, and printed information |
| APEX FITNESS GROUP (and Star Person Design) | 2,702,445 | Class 9: Audio and visual recordings, namely, prerecorded cassettes, compact discs, videos, DVDs, and CD-ROMS in the field of health, fitness, or nutrition |
| APEX FITNESS GROUP (and Star Person Design) | 2,702,444 | Class 16: Printed matter, namely books, instruction manuals, periodicals, brochures, and magazines in the field of health, fitness, or nutrition. |
| APEX TRAINING SYSTEM (and Star Person Design) | 2,701,627 | Class 35: Distributorships featuring vitamins and fitness programs in the form of licensed software, videotapes, and printed information |
| APEX FITNESS GROUP VIRTUAL GYM | 78/851,695 | Class 41: Providing an on-line computer database featuring information regarding fitness services which allow users to create fitness programs; providing information in the field of fitness and bodybuilding; |

| Mark | Reg. / App. No. | Goods/Services |
|---|---|---|
| | | consultation services with personal trainers.<br>Class 44: Providing information in the field of nutrition |

(*Id.*) (the "24 Hour Fitness APEX Marks").

On our about November 1, 2007, counsel for Apex , LLC, Apex at Home, LLC and Apex Stores, LLC (collectively, the three Apex entities are referred to as "Apex") sent 24 Hour Fitness a letter enclosing a Petition for Cancellation that had been filed that same day with the PTO's TTAB. (California Complaint, ¶ 16.) In Apex's Petition for Cancellation, it sought to cancel in whole or in part the 24 Hour Fitness APEX Marks under U.S. Registration Nos. 2,701,627, 2,703,428 and 2,936,205 based on its claim that these marks were confusingly similar to one or more of Apex's Marks in violation of Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d). ("Apex's TTAB Cancellation Action") (*Id.*, ¶ 17.) Apex further asserted the claim that 24 Hour Fitness' continued use of the 24 Hour Fitness APEX Marks diluted the distinctive quality of one or more of Apex's Marks. (*Id.*) On December 12, 2007, 24 Hour Fitness answered Apex's Petition for Cancellation by denying Apex's relevant allegations regarding likelihood of confusion and dilution and asserting its affirmative defenses. (*Id.*, ¶ 17.)

Following Apex's November 1 letter, counsel for 24 Hour Fitness and Apex conferred regarding the potential for settlement, with a consent agreement discussed between the parties as a method of settling the matter. (California Complaint, ¶ 18.) However, around March 10, 2008, counsel for Apex sent 24 Hour Fitness a letter stating that 24 Hour Fitness' continued use of its APEX and APEX FITNESS marks resulted in "a great likelihood of confusion" with Apex's marks, and that Apex was "unwilling to compromise" and wanted to "protect its rights." (*Id.*, ¶ 19, Exh. 4.) Apex also rejected the settlement terms previously discussed. (*Id.*) On March 27, 2008, 24 Hour Fitness filed the California Action in the District Court for the Northern District of California. (Anderson Decl., ¶ 4, Exh. A.) Before 24 Hour Fitness served the complaint in the California Action, the parties resumed settlement discussions, with 24 Hour

Fitness sending a letter on April 11, 2008 proposing terms for settlement. (California Complaint, ¶ 21.)

**B. Plaintiff's Various Apex Entities**

The parties bringing this Action, Apex, LLC and Apex at Home, LLC, are now the purported owners of the same trademarks that are the subject of the California Action. (*Compare* California Complaint to Rhode Island Complaint.) However, when 24 Hour Fitness filed its original complaint on March 27, 2008, those same marks were owned by Apex Stores, LLC. (*See* California Complaint.) Due to assignments recorded with the U.S. Patent and Trademark Office on April 30, 2008 (five days before the instant Rhode Island Complaint was filed), all of the trademarks alleged in the Rhode Island Complaint as owned by Apex, LLC and Apex at Home, LLC, are registrations or pending applications that were previously registered or applied for in the name of Apex Stores, LLC. (*See* California Complaint, ¶ 13.) 24 Hour Fitness originally named as a defendant in the California action the only registered owner of the trademarks at that time: Apex Stores, LLC. (*See* California Complaint.) However, since ownership of those marks was recently transferred, 24 Hour Fitness has amended its complaint in the California Action to add as defendants Apex, LLC and Apex at Home, LLC. (*See* California Complaint). 24 Hour Fitness has alleged, on information and belief, that Apex Stores, LLC, Apex, LLC and Apex at Home, LLC are effectively the same entity, as all three are listed with the Rhode Island Secretary of State Corporations Division as having the same corporate address and agent. (See California Complaint, ¶ 14.)

**C. Issues and Claims in 24 Hour Fitness' California Complaint**

On March 27, 2008, 24 Hour Fitness commenced the California Action, asserting under its original complaint a claim for declaratory relief, following Apex's apparent rejection of any settlement under which 24 Hour Fitness would be allowed to continue its use of its Apex marks. (California Complaint, ¶ 19, Exh. 4.) 24 Hour Fitness' claims arise under the Lanham Act, 15 U.S.C. § 1051 *et seq*. (California Complaint, ¶ 1.) Specifically, the California

Complaint contains a claim for declaratory relief of non-infringement of trademark, 15 U.S.C. § 1125(a), thereby requesting adjudication of trademark rights and infringement issues between the parties in regard to their respective APEX Marks. (California Complaint, ¶¶ 26-29.) 24 Hour Fitness additionally requests as relief a declaratory judgment that 24 Hour Fitness' use of its APEX Marks did not infringe on any of Apex's Marks. (California Complaint, ¶ 30(a).) Further, 24 Hour Fitness requested as relief that Apex be enjoined from bringing any lawsuit against 24 Hour Fitness based upon trademark infringement or dilution in connection with 24 Hour Fitness' use or registration of its APEX Marks. (California Complaint, ¶ 30(b).) 24 Hour Fitness' California Complaint was served on May 12, 2008. (Anderson Decl., ¶ 11.)

**D. <u>Issues and Claims in the Complaint in this Action</u>**

On May 5, 2008, 39 days after 24 Hour Fitness filed the California Action, Apex, LLC and Apex at Home, LLC filed the instant complaint in District of Rhode Island (the "Rhode Island Complaint") asserting what are, in essence, defenses to 24 Hour Fitness' claims and counterclaims in the California Action. In this second-filed Action, the registered APEX Marks allegedly owned by Apex are a subset of Apex' Marks as alleged by 24 Hour Fitness in the California Action. (*Compare* Rhode Island Complaint ¶ 10 with California Complaint, ¶ 9.) With language nearly identical to the California Action, Apex describes this Action as one for trademark infringement under the Lanham Act, 15 U.S.C. § 1114 and 1125(a). (Rhode Island Complaint, ¶ 1.) The Rhode Island Complaint contains five trademark infringement or "passing off" claims, all of which are based on the Lanham Act, "common law unfair competition" or "common law trademark infringement." (Rhode Island Complaint, ¶¶ 41-57.) Each claim simply reincorporates by reference the allegations regarding each parties' respective APEX Marks. (Rhode Island Complaint, ¶¶ 41, 45, 49, 52, 55.) The relief requested in the Rhode Island Complaint consists only of injunctive relief and damages that are essentially a mirror image of the relief requested under the California Complaint. (*Compare* California Complaint, pg. 9, with Rhode Island Complaint, pgs. 9-10.)

**E. Apex's Refusal to Dismiss or Stipulate to Transfer This Action.**

In light of its previously filed California Action, 24 Hour Fitness has requested that Apex dismiss the current action or agree to transfer its trademark infringement claims as counterclaims in the California Action. (Anderson Decl., ¶ 8.) Although acknowledging that the California Action was filed first, Apex has refused to dismiss or agree to transfer this action. (*Id.*).

## III. LEGAL ARGUMENT

### A. This Action Should be Dismissed Under 28 U.S.C. § 1406(a) in view of the Earlier-Filed Action Pending in the Northern District of California.

A federal court has power to dismiss a case for improper venue. 28 U.S.C. § 1406(a). Generally, there is a strong presumption in favor of the forum of the first-filed suit. *New York v. Exxon Corp*., 932 F.2d 1020, 1025 (2d Cir. 1991); *Biogen, Inc. v. Schering AG*, 954 F. Supp. 391, 398 (D. Mass. 1996). To conserve judicial resources and avoid conflicting rulings, the first-to-file rule gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction. *See, e.g., Northwest Airlines v. American Airlines*, 989 F.2d 1002, 1006 (8th Cir. 1993) (affirming district court's injunction against second-filed suit); *J.P. Sercel Associates, Inc. v. New Wave Research*, 2003 U.S. Dist. LEXIS 17891, *6 (D.N.H. 2003) (granting motion to dismiss second-filed case); *Gen. Prods. Mach. Shop, Inc. v. Systematic Inc.*, 2006 U.S. Dist. LEXIS 50514 (D. Idaho 2006) (dismissing second-filed suit). This rule "serves the purpose of promoting efficiency well and should not be disregarded lightly." *Church of Scientology of California v. United States Department of Army,* 611 F.2d 738, 750 (9th Cir. 1979).

The first-to-file rule is frequently applied by the First Circuit where, as here, the first-filed action is one for declaratory relief. *See, e.g., SW Industries, Inc. v. Aetna Casualty &*

*Surety Co.*, 653 F. Supp. 631, 636 (D.R.I. 1987). "The fact that (plaintiff's) action is for declaratory relief does not bar the application of the first-filed presumption." *GSI Lumonics, Inc. v. Biodiscovery, Inc.*, 112 F. Supp. 2d 99, 105 (D. Mass. 200); *see further Biogen*, 954 F. Supp. 398 ("the general rule favors the forum of the first-filed action, whether or not it is a declaratory action"); *Transcanada Power Mktg, Ltd. v. The Narragansett Electric Co.*, 402 F. Supp. 2d 343, fn. 7 (D. Mass. 2005) (holding that "[w]hen applying the first-filed rule in such circumstances, it matters little whether the plaintiff sought declaratory relief rather than money damages"). Declaratory relief is appropriate when a party is "concerned about damage to its reputation potentially incurred by allegations of...infringement that [are] not...awaiting judicial scrutiny." *GSI Lumonics*, 112 F. Supp. 2d at 105.

District courts in California, where 24 Hour Fitness has filed suit, are in agreement on the first-to-file rule, including on the propriety of according priority to a first-filed declaratory judgment action. *See, e.g., Sony Computer Entm't America, Inc. v. America Medical Response, Inc.*, 2007 U.S. Dist. LEXIS 24294 (N.D. Cal. 2007); *Palantir Technologies, Inc. v. Palantir.net, Inc.*, 2007 U.S. Dist. LEXIS 76830 (N.D. Cal. 2007); *M.D. Beauty, Inc. v. Gross*, 2003 U.S. Dist. LEXIS 27257 (N.D. Cal. 2003). The purpose of allowing a party to file a declaratory relief action is to "alleviate the necessity of waiting indefinitely for a [party] to file an infringement action." *M.D. Beauty, Inc.*, 2003 U.S. Dist. LEXIS 27257 at *8; *Guthy-Renker Fitness, LLC v. Icon Health & Fitness*, 179 F.R.D. 264, 272 (C.D. Cal. 1998). Declaratory relief "allows a party in *reasonable apprehension* of suit" to file its action for a declaration of its rights. *M.D. Beauty, Inc.*, 2003 U.S. Dist. LEXIS 27257 at *8 (emphasis in original). It allows a plaintiff to "expediently adjudicate the issues presented ... rather than engage in protracted discussions which may not result in resolution." *Guthy-Renker Fitness, LLC*, 179 F.R.D. at 272.

In applying the first-to-file rule, a court looks to three threshold factors: "(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues." *Guthy-Renker Fitness LLC*, 179 F.R.D. at 270; *Z-Line Designs, Inc v. Bell'O International LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003). Each of these three factors heavily weighs in favor of dismissal of the instant Action.

**1. <u>The California Action Was Indisputably Filed First; Date of Service Has No Effect on this Priority.</u>**

The California Action was filed on March 27, 2008. This Action was filed on May 5, 2008. Because the California Action was unquestionably filed first,[2] the chronology factor weighs in favor of dismissal of this Action.

Furthermore, service has "no effect" on the chronology factor of the first-to-file rule. *J.P. Sercel Associates, Inc. v. New Wave Research*, 2003 U.S. Dist. LEXIS 17891, *6 (D.N.H. 2003). Though the complaint in this Action was served first, "the first-filed rule, as its name indicates, is premised upon a priority of *filing* the complaint, not upon a priority of *serving* the complaint." *Peregrine Corp. v. Peregrine Industries, Inc.*, 769 F. Supp. 169, 172 (E.D. Pa. 1991) (emphasis in original) ("the filing of a suit (rather than service) is still a far better touchstone for determining chronological preference of cases"); *Guthy-Renker Fitness, LLC*, 179 F.R.D. at 272 (finding that "Plaintiff's [87-day] delay in serving the First Amended Complaint comported with both of the requirements of [Federal Rule of Civil Procedure,] Rule 4(m)," and had no effect on the first-to-file rule). Indeed, courts have recognized that delaying service of the first-filed action manifests a party's desire "to avoid litigation if at all possible." *Biogen, Inc. v. Schering AG*, 954 F. Supp. 391, 398 (D. Mass. 1996).

There is no dispute that the California Action was filed first, thus, satisfying the

[2] The first-to-file rule applies irrespective of whether an amended complaint is later filed in the first-filed action. *See GT Plus, Ltd. v. Ja-Ru, Inc.*, 41 F. Supp. 2d 421, 424 (S.D.N.Y. 1998).

chronology element of the first-to-file rule.

**2. The Apex Plaintiffs in this Action Have Been Named in the California Action, and All Apex Entities Have Identical Trademark Interests.**

Apex, LLC and Apex at Home, LLC have been named as defendants in the California Action, along with Apex Stores, LLC. The Defendant in this action (24 Hour Fitness) is a plaintiff in the Rhode Island Action. While Apex Stores is not a party to this Action, Apex's decision not to sue on behalf of this Apex entity in Rhode Island is of no consequence to this analysis. The fact that the trademarks asserted in this Action are identical to the marks at issue in the California Action make it abundantly clear that all of the Apex entities at issue have identical interests for purposes of the litigation. The registered APEX Marks alleged by plaintiffs in the instant Action are simply a subset of Apex Stores' APEX Marks as alleged by 24 Hour Fitness in its California Action. (*Compare* California Complaint, ¶ 12, with Rhode Island Complaint, ¶ 9.) Further, only five days before the Rhode Island Action was filed, Apex Stores, LLC recorded with the PTO an assignment of the relevant trademarks to Apex, LLC, now a plaintiff in this Action. (California Complaint, ¶ 13; Anderson Decl., ¶ 7, Exh. C.) Moreover, the plaintiffs in this Action, Apex, LLC, and Apex At Home, LLC, both have the same address and corporate agent as Apex Stores in the California Action. (California Complaint, ¶ 14.)

In applying the "first to file" rule, courts have repeatedly recognized that "litigations need only be substantially similar and not exactly identical." *See, e.g., Best Western Int'l, Inc. v. Mahroom*, 2007 U.S. Dist. LEXIS 32969, *5, fn. 1 (D. Ariz. 2007). "This result logically follows to prevent a litigant from unnecessarily adding a party or claim in a case involving the same transaction or occurrence solely to defeat the first-to-file rule." *Id; see also Weinstein v. Metlife Inc.*, 2006 U.S. Dist. LEXIS 83115, *3 (N.D. Cal. 2006) ("The addition of defendants is not dispositive, especially where, as here, the parties represent the same interests");

*Barapind v. Reno*, 72 F. Supp. 2d 1132, 1145 (E.D. Cal. 1999) ("The parties need not be identical....If the parties 'represent the same interests' the court may determine the second action is duplicative."). Indeed, there only needs to be similarity or substantial overlap between the parties in the two actions. *See, e.g., Gen. Prods. Mach. Shop, Inc. v. Systematic Inc.*, 2006 U.S. Dist. LEXIS 50514 (D. Idaho 2006); *Supervalu Inc. v. Exec. Dev. Sys.*, 2007 U.S. Dist. LEXIS 3141, *1 (D. Idaho 2007). There is far more than "substantial similarity" of parties in the instant Action; in fact, 24 Hour Fitness has named <u>all three</u> Apex entities in its California Complaint rather than merely the two Apex entities named as Plaintiff's in the Rhode Island Complaint.

**3. <u>The Issues Raised in the California Action Are Identical.</u>**

In determining whether the cases involve the same issue, "it is enough that the overall content of each suit is not very capable of independent development, and will be likely to overlap to a substantial degree." *Supervalu Inc.*, 2007 U.S. Dist. LEXIS at *1-2.

The allegations in the Rhode Island Complaint confirm that it is substantially similar to the California Complaint. The Rhode Island Complaint alleges that 24 Hour Fitness's actions constitute infringement, false designation of origin under 15 U.S.C. § 1125(a), and unfair competition. Apex's purported claims are nothing more than compulsory counterclaims to 24 Hour Fitness' California Action. *See* Fed. R. Civ. P. 13(a). Additionally, both actions seek relief regarding infringement issues affecting the identical trademarks. (*Compare* California Complaint, ¶ 12, with Rhode Island Complaint, ¶ 9.)

Thus, there is no dispute that both actions involve claims based upon the same trademarks, issues, and conduct.

**B. <u>No Equitable Exception to the First-to-File Rule Is Applicable to This Case.</u>**

It is black letter law that the first-to-file rule "should not be disregarded lightly." *Church of Scientology v. U.S. Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979); *Z-Line*

*Designs, Inc. v. Bell'O Int'l LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003). There are, however, equitable exceptions to the first-to-file rule. *See Transcanada Power Mktg*, 402 F. Supp. 2d at 347, fn. 7. None of these exceptions applies here.

**1. The Only Forum Shopping Here Is By Defendants' Refusal to Dismiss this Action in Favor of the First-Filed California Action.**

There is nothing resembling "forum shopping" in this first-filed action. 24 Hour Fitness filed this Action in the jurisdiction where (1) its principal place of business is located, (2) its executive offices are located, (3) 24 Hour Fitness uses its APEX trademarks, (4) senior management and other personnel involved in the registration of the Apex trademarks are located, and (5) records and documents establishing 24 Hour Fitness's registration of the Apex trademarks are located. (Declaration of Kimberly Griffin, filed herewith ("Griffin Decl."), ¶¶ 2-5.)

Defendant cannot make the same claim, as maintaining this Action is a blatant attempt to forum shop and of duplicative litigation, by taking a compulsory counterclaim and persisting in making a separate federal case out of it. The compulsory counterclaim rule requires a defendant to plead any counterclaim that arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction. *See* Fed. R. Civ. P. 13. To determine whether a claim arises out of the same transaction or occurrence, the courts apply a "logical relationship test" to determine whether a counterclaim is compulsory." *See, e.g., Sparrow v. Mazda Am. Credit*, 385 F. Supp. 2d 1063, 1066 (E.D. Cal. 2005). Under this test, the court "analyze[s] whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Id.* (quotation marks and citations omitted).

Here the facts mandate that all claims between 24 Hour Fitness and the Apex entities related to the parties' respective APEX trademarks be litigated in one forum. Both lawsuits are based on trademark infringement claims under the Lanham Act, and request adjudication in regard to the parties' trademark rights. Further, both lawsuits allege claims arising out of the simultaneous use and registration of trademarks using the term "APEX." Rather than filing a compulsory counterclaim in California, the Apex entities are now improperly attempting to maintain this action in Rhode Island. (Anderson Decl., ¶ 8.)

**2. 24 Hour Fitness' Delay in Service Does Not Suggest Bad Faith or Defeat the First-to-File Rule.**

Nothing about the California Action suggests bad faith by 24 Hour Fitness. The dispute between the parties began as follows: without any prior communications, on November 1, 2007, Apex Stores initiated a cancellation against 24 Hour Fitness' trademark registrations for its APEX marks that had been in use since 1994. (California Complaint, ¶¶ 9, 16.) Thereafter, 24 Hour Fitness attempted over several months to negotiate settlement, which discussions culminated in express statements by Apex Stores that it "wanted to protect its rights" and was "unwilling to compromise." (*Id.*, ¶ 19.)

With this growing threat to its rights, 24 Hour Fitness filed the California Action and thereafter continued in good faith to attempt to reach a settlement with Apex Stores. (California Complaint, ¶ 22.) 24 Hour Fitness filed the California Action, as it was entitled to do, because it wanted to alleviate the necessity of waiting indefinitely for Apex Stores to bring its infringement action. *GSI Lumonics*, 112 F. Supp. 2d at 105.

24 Hour Fitness' 39-day delay in serving the California Complaint does not evidence bad faith. *See Transcanada Power Marketing*, 402 F. Supp. 2d 348 ("there can be no race to the courthouse when only one party is running"); *Guthy-Renker Fitness, LLC*, 179 F.R.D.

at 272 (noting, analogously, that "a declaratory action is an appropriate vehicle 'to alleviate the necessity of waiting indefinitely for a patent owner to file an infringement action'") Further, whether or not the owner of the first-filed action serves the complaint has no effect on the application of the first-filed rule. *J.P. Sercel Associates*, 2003 U.S. Dist. LEXIS 17891, *6. As noted by the court in *Peregrine Corp. v. Peregrine Industries, Inc.*, "the first-filed rule, as its name indicates, is premised upon a priority of *filing* the complaint, not upon a priority of *serving* the complaint." 769 F. Supp. 169, 172 (E.D. Pa. 1991) (emphasis in original) ("the filing of a suit (rather than service) is still a far better touchstone for determining chronological preference of cases"). A number of other cases in both the First and Ninth Circuits have declined to find bad faith where the plaintiff in the first-filed action does not serve the complaint immediately. *See, e.g.*, *Guthy-Renker Fitness, LLC*, 179 F.R.D. at 272 (finding that "Plaintiff's (87-day) delay in serving the First Amended Complaint comported with both of the requirements of (Federal Rule of Civil Procedure,) Rule 4(m)," and had no effect on the first-to-file rule). Indeed, courts have recognized that delaying service of the first-filed action manifests a party's desire "to avoid litigation if at all possible." *Biogen, Inc. v. Schering AG*, 954 F. Supp. 391, 398 (D. Mass. 1996). 24 Hour Fitness' subsequent attempts after filing to pursue settlement with Apex Stores clearly evidence 24 Hour Fitness' good faith intent to avoid litigation. (California Complaint, ¶ 22.)

### 3. The Balance of Convenience Does Not Favor the Rhode Island Second-Filed Suit.

The case law repeatedly recognizes that "the defendant must make a strong showing of inconvenience ... to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *Silverlit Toys Manufactory, LTD v. Absolute Toy Mktg.*, 2007 U.S. Dist. LEXIS 14538 (C.D. Cal. 2007); *Bohara v. Backus Hosp. Med. Ben. Plan*, 390 F. Supp. 2d 957, 962 (C.D. Cal. 2005). In this

matter, there will be no such strong showing of inconvenience to justify setting aside the "first to file" rule. The parties' respective convenience factors are in equipoise. While Apex may argue that certain of their witnesses are located in Rhode Island, 24 Hour Fitness, and its key witnesses involved in its Apex Fitness Group business unit who have knowledge of 24 Hour Fitness' APEX marks, reside and work at 24 Hour Fitness' San Ramon, California headquarters or other offices in California. (Griffin Decl., ¶¶ 3-4.) While Apex may well argue their documents are in Rhode Island, 24 Hour Fitness' documents are found at its Northern California headquarters or other offices in California. (Griffin Decl., ¶ 5.) While Defendant may argue that 24 Hour Fitness does business in Rhode Island, Apex conducts business and sells products under the APEX name in Northern California through websites at the *apexstores.com* and *apexathome.com* domain addresses. (California Complaint, ¶ 11-12.) Such circumstances make the Apex entities amenable to jurisdiction in California. *See, e.g., Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999) (in denying motion to dismiss for lack of personal jurisdiction, finding that defendant's website, which offered products containing infringing intellectual property, made defendant subject to jurisdiction in California).

**C. <u>As an Alternative to Dismissal, This Case Should Be Stayed Pending Resolution of the California Case.</u>**

If this Court declines to dismiss this case, it should be stayed pending resolution of the California Action. District courts throughout the First Circuit have consistently applied the first-to-file rule and have declined to decide the appropriate forum when a similar lawsuit was first-filed elsewhere. *See, e.g. Cruz v. Hartford Cas. Ins. Co.*, 2005 U.S. Dist. LEXIS 9924, *8 (D.R.I. 2005) ("case law indicates that the court in which the first-filed case was brought decides the question of whether or not the first-filed rule, or alternatively, an exception to the first-filed rule, applies"); *Gemco Latinoamerica, Inc. v. Seiko Time Corp.*, 623 F. Supp. 912 (D.P.R. 1985) ("Where an action is brought in one federal district court and a later action

embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action"); *Boston and Maine Corp. v. United Transportation Union*, 110 F.R.D. 322 (D. Mass. 1986) ("Once the likelihood of substantial overlap between....two suits [has] been demonstrated, it [is] no longer up to the [second court] to resolve the question of whether both should be allowed to proceed. By virtue of its prior jurisdiction over the common subject matter....the ultimate determination of whether there *actually* (is) substantial overlap requiring consolidation....belong[s] to [the first court]."). Thus, this Court should defer to the judgment of the California court regarding the appropriate forum and stay this case if it declines to dismiss it. *See SW Industries, Inc. v. Aetna Casualty & Surety Co.*, 653 F. Supp. 631, 639 (D.R.I. 1987); *Boston and Maine Corp.*, 110 F.R.D. at 330 (staying the proceedings to permit the court of first-filing to rule on a motion to transfer); *Gemco*, 623 F. Supp. at 916 (action stayed to allow the court of the first-filed action to rule on motion to enjoin).

Here, Apex will presumably contest venue in the California case, seeking to have the California Action transferred to this Court (which was Apex's obvious purpose in filing this lawsuit). Thus, if this Court declines to dismiss or stay this Action, there will likely be dueling venue motions in both cases, which raises the specter of possible inconsistent rulings. Accordingly, the interests of consistency and judicial economy warrant a stay of this action pending the California court's ruling on venue and other anticipated motions. If the California court enjoins this Action, this case may be consolidated or otherwise be coordinated and brought before the same judge as the California Action. As it is customary for the court of the second-filed action to let the court of the first-filed action resolve the competing jurisdictional disputes presented by the first-filed doctrine, 24 Hour Fitness respectfully requests that this Court dismiss or stay the present Action. *SW Industries, Inc.*, 653 F. Supp. at 639.

## IV. CONCLUSION

A dismissal of this case, or alternatively, a stay would promote the interests of judicial economy. For the foregoing reasons, 24 Hour Fitness requests that this case be

dismissed, or alternatively, stayed in favor of the first-filed California Action.

Dated: Providence, Rhode, Island
June 3, 2008

Respectfully submitted,

CHISHOLM CHISHOLM & KILPATRICK LLP

/s/ J. Scott Kilpatrick

J. Scott Kilpatrick #4036
One Turks Head Place
Ste. 1313
Providence, RI 02903
Telephone: (401) 331-6300
jskilpatrick@cck-law.com

Of Counsel:

MANATT, PHELPS & PHILLIPS, LLP
Susan E. Hollander SHollander@manatt.com
Britt L. Anderson blanderson@manatt.com
Christian E. Baker
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone (650) 812-1300
Facsimile: (650) 213-0260

*Attorneys for Defendant 24 Hour Fitness USA, Inc.*

## TABLE OF CONTENTS

**Page**


I. SUMMARY OF MOTION ..... 1

II. BRIEF FACTUAL AND PROCEDURAL BACKGROUND ..... 1

A. Factual Background ..... 1

B. Plaintiff's Various Apex Entities ..... 4

C. Issues and Claims in 24 Hour Fitness' California Complaint ..... 4

D. Issues and Claims in the Complaint in this Action ..... 5

E. Apex's Refusal to Dismiss or Stipulate to Transfer This Action ..... 6

III. LEGAL ARGUMENT ..... 6

A. This Action Should be Dismissed Under 28 U.S.C. § 1406(a) in view of the Earlier-Filed Action Pending in the Northern District of California ..... 6

1. The California Action Was Indisputably Filed First; Date of Service Has No Effect on this Priority ..... 8

2. The Apex Plaintiffs in this Action Have Been Named in the California Action, and All Apex Entities Have Identical Trademark Interests ..... 9

3. The Issues Raised in the California Action Are Identical ..... 10

B. No Equitable Exception to the First-to-File Rule Is Applicable to This Case ..... 10

1. The Only Forum Shopping Here Is By Defendants' Refusal to Dismiss this Action in Favor of the First-Filed California Action ..... 11

2. 24 Hour Fitness' Delay in Service Does Not Suggest Bad Faith or Defeat the First-to-File Rule ..... 12

3. The Balance of Convenience Does Not Favor the Rhode Island Second-Filed Suit ..... 13

C. As an Alternative to Dismissal, This Case Should Be Stayed Pending Resolution of the California Case ..... 14

IV. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Page**

### CASES

*Barapind v. Reno*,
72 F. Supp. 2d 1132 (E.D. Cal. 1999)........ 10

*Best Western Int'l, Inc. v. Mahroom*,
2007 U.S. Dist. LEXIS 32969 (D. Ariz. 2007)........ 9

*Biogen, Inc. v. Schering AG*,
954 F. Supp. 391 (D. Mass. 1996)........ 6, 7, 8, 13

*Bohara v. Backus Hosp. Med. Ben. Plan*,
390 F. Supp. 2d 957 (C.D. Cal. 2005)........ 13

*Boston and Maine Corp. v. United Transportation Union*,
110 F.R.D. 322 (D. Mass. 1986)........ 15

*Church of Scientology of California v. United States Department of Army*,
611 F.2d 738 (9th Cir. 1979)........ 6, 10

*Cruz v. Hartford Cas. Ins. Co.*,
2005 U.S. Dist. LEXIS 9924 (D.R.I. 2005)........ 14

*Decker Coal Co. v. Commonwealth Edison Co.*,
805 F.2d 834 (9th Cir. 1986)........ 13

*Gemco Latinoamerica, Inc. v. Seiko Time Corp.*,
623 F. Supp. 912 (D.P.R. 1985)........ 14, 15

*Gen. Prods. Mach. Shop, Inc. v. Systematic Inc.*,
2006 U.S. Dist. LEXIS 50514 (D. Idaho 2006)........ 6, 10

*GSI Lumonics, Inc. v. Biodiscovery, Inc.*,
112 F. Supp. 2d 99 (D. Mass. 200)........ 7, 12

*GT Plus, Ltd. v. Ja-Ru, Inc.*, 41 F. Supp. 2d 421, 424 (S.D.N.Y. 1998)........ 8

*Guthy-Renker Fitness, LLC v. Icon Health & Fitness*,
179 F.R.D. 264 (C.D. Cal. 1998)........ 7, 8, 12, 13

*J.P. Sercel Associates, Inc. v. New Wave Research*,
2003 U.S. Dist. LEXIS 17891 (D.N.H. 2003)........ 6, 8, 13

*M.D. Beauty, Inc. v. Gross*,
2003 U.S. Dist. LEXIS 27257 (N.D. Cal. 2003)........ 7

*New York v. Exxon Corp.*,
932 F.2d 1020 (2d Cir. 1991)........ 6

*Northwest Airlines v. American Airlines*,
989 F.2d 1002 (8th Cir. 1993)........ 6

*Palantir Technologies, Inc. v. Palantir.net, Inc.*,
2007 U.S. Dist. LEXIS 76830 (N.D. Cal. 2007)........ 7

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Peregrine Corp. v. Peregrine Industries, Inc.*,
769 F. Supp. 169 (E.D. Pa. 1991) ........ 8, 13

*Silverlit Toys Manufactory, LTD v. Absolute Toy Mktg.*,
2007 U.S. Dist. LEXIS 14538 (C.D. Cal. 2007) ........ 13

*Sony Computer Entm't America, Inc. v. America Medical Response, Inc.*,
2007 U.S. Dist. LEXIS 24294 (N.D. Cal. 2007) ........ 7

*Sparrow v. Mazda Am. Credit*,
385 F. Supp. 2d 1063 (E.D. Cal. 2005) ........ 11

*Supervalu Inc. v. Exec. Dev. Sys.*,
2007 U.S. Dist. LEXIS 3141 (D. Idaho 2007) ........ 10

*SW Industries, Inc. v. Aetna Casualty & Surety Co.*,
653 F. Supp. 631 (D.R.I. 1987) ........ 7, 15

*Transcanada Power Mktg, Ltd. v. The Narragansett Electric Co.*,
402 F. Supp. 2d 343 (D. Mass. 2005) ........ 7, 11, 12

*Weinstein v. Metlife Inc.*,
2006 U.S. Dist. LEXIS 83115 (N.D. Cal. 2006) ........ 9

*Z-Line Designs, Inc v. Bell'O International LLC*,
218 F.R.D. 663 (N.D. Cal. 2003) ........ 8, 11

**STATUTES**

15 U.S.C. § 1051 ........ 4

15 U.S.C. § 1052(d) ........ 3

15 U.S.C. § 1114 ........ 5

15 U.S.C. § 1125(a) ........ 5, 10

28 U.S.C. § 1406(a) ........ 6

**RULES**

Fed. R. Civ. P. 13 ........ 11

Fed. R. Civ. P. 13(a) ........ 10

Fed. R. Civ. P. 4(m) ........ 8, 13

41284483.3