UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| APEX, LLC,<br>APEX AT HOME, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>24 HOUR FITNESS USA, INC.,<br><br>Defendant. | C.A. No. 08-169-ML |

**PLAINTIFFS APEX, LLC AND APEX AT HOME, LLC'S OBJECTION TO DEFENDANT'S MOTION TO DISMISS, OR ALTERNATIVELY, STAY PROCEEDINGS**

Plaintiffs Apex, LLC and Apex At Home, LLC (collectively, "Plaintiffs") hereby object to Defendant 24 Hour Fitness USA, Inc.'s Motion to Dismiss, or Alternatively, Stay Proceedings. In support of their Objection, Plaintiffs rely upon the accompanying Memorandum of Law and supporting Declarations and Exhibits.

APEX, LLC and APEX AT HOME, LLC,

By its Attorneys,

/s/ Heather A. Pierce
Raymond M. Ripple (#6489)
Heather A. Pierce (#7345)
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (Fax)

and

Steven M. Cowley (*pro hac vice*)
Carrie Webb Olson (*pro hac vice*)
Edwards Angell Palmer & Dodge LLP
111 Huntington Avenue
Boston, MA 02199-7613
(617) 239-0100
(617) 227-4420 (Fax)
scowley@eapdlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2008, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Heather A. Pierce

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| APEX, LLC,<br>APEX AT HOME, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>24 HOUR FITNESS USA, INC.,<br><br>Defendant. | C.A. No. 08-169-ML |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OBJECTION TO DEFENDANT'S MOTION TO DISMISS, OR ALTERNATIVELY, STAY PROCEEDINGS**

Plaintiffs Apex, LLC and Apex At Home, LLC ("Apex At Home") (collectively, "Plaintiffs") file this Memorandum of Law in opposition to Defendant 24 Hour Fitness USA, Inc.'s ("24 Hour Fitness") Motion to Dismiss, or Alternatively, Stay Proceedings ("Motion to Dismiss").

## I. INTRODUCTION

24 Hour Fitness has moved to dismiss, or stay, this action based solely on the existence of a declaratory judgment action that it filed in the Northern District of California on March 27, 2008. 24 Hour Fitness' reliance on the first to file rule is inappropriate, however, because the California action upon which it is premised was an anticipatory suit that it silently filed without serving for over six weeks, while the parties conducted negotiations of a potential agreement that would avoid any litigation. 24 Hour Fitness' purpose in filing that lawsuit was not to resolve an existing dispute, but to use it as negotiating leverage and to secure its choice of forum in the event that settlement negotiations ultimately proved unsuccessful (as they eventually did).

24 Hour Fitness' Motion to Dismiss should be denied, because the case law in this Circuit is clear that the presumption favoring first-filed actions does not apply in cases such as this one where the first-filed suit was the result of a tactical "race to the courthouse" to secure a defendant's choice of forum. Courts do not allow parties like 24 Hour Fitness to engage in such blatant negotiation and litigation gamesmanship in order to deprive the true plaintiffs in interest – here, Apex, LLC and Apex At Home – of their choice of forum to resolve their affirmative claims, by racing to file a "placeholding" declaratory judgment complaint while purporting to engage claimants in good faith settlement negotiations.

Moreover, this action should not be stayed pending resolution of the California action, since 24 Hour Fitness' complaint seeks only a limited declaration of the parties' rights that, if brought to judgment first, will resolve only a fraction of the claims raised in Apex, LLC and Apex At Home's Complaint filed in this Court.

Accordingly, for the reasons set forth more fully below, Plaintiffs respectfully request that the Court deny 24 Hour Fitness' Motion to Dismiss.

## II. BACKGROUND

### A. The Parties

Plaintiffs Apex, LLC and Apex At Home are both Rhode Island limited liability companies with principal places of business in Pawtucket, Rhode Island. (Declaration of Andrew A. Gates ("Gates Decl."), attached hereto as Exhibit 1, at ¶¶ 2, 6.) While affiliates, they are separate entities that maintain separate books, records and bank accounts, and do not commingle assets or liabilities. (Id. at ¶ 15.)

Formed on June 12, 2001, Apex At Home provides retail services. (Id. at ¶ 16.) Since July 1, 2001, Apex at Home has owned and operated an internet retail store at the domain names

"apexstores.com" and "apexexpress.com," which were transferred to Apex At Home from Apex Stores, a separate corporate affiliate, on June 30, 2001. (Id. at ¶¶ 8, 11.) Since at least 1942, Apex At Home, its predecessors and affiliates, have consistently provided and continue to provide retail services. (Id. at ¶ 16.) Over the years, these companies have expanded these retail services to include, *inter alia*, the operation of retail department stores, specialty concept stores, mail order operations and online retail operations. (Id.) Since at least as early as the 1960s, the retail services offered by the Apex companies have included a wide variety of general merchandise and services, including, without limitation, sporting goods, athletic apparel, athletic footwear, athletic equipment, fitness equipment, various food items and products, health and beauty products, related fitness accessories and a wide variety of other related and unrelated items. (Id. at ¶ 17.)

Founded on March 30, 2004, Apex, LLC was formed for the sole purpose of owning various trademarks, including all of the "Apex" trademarks. (Id. at ¶¶ 2, 5.) Apex, LLC owns the common law and registered "Apex" marks that are at issue in this lawsuit and in the lawsuit filed by 24 Hour Fitness in the Northern District of California. (Id. at ¶ 5.) These trademarks were transferred to Apex, LLC from Apex Stores on April 30, May 6 and June 2, 2008. (Id. at ¶ 13.) The "Apex" mark has been in continuous use in connection with various retail store, mail order purchase and computerized online retail services since at least 1942, with the "Apex Online" and "Apex Stores" marks in continuous use since at least 1996. (Id. at ¶ 18.)

Founded in 1983, 24 Hour Fitness operates a chain of health and fitness clubs and, through its Apex Fitness Group division, provides fitness and nutrition programs and products. (Memorandum of Law in Support of Defendant 24 Hour Fitness' Motion to Dismiss, or Alternatively, Stay Proceedings ("24 Hour Fitness Motion to Dismiss"), at 1.)

**B. The Petition for Cancellation of 24 Hour Fitness' Marks**

On December 15, 2006, the United States Patent and Trademark Office ("USPTO") refused U.S. Application Serial No. 78/928,022 filed by Apex Stores to register the service mark "Apex Companies."[1] (Declaration of John E. Ottaviani ("Ottaviani Decl."), attached hereto as Exhibit 2, at ¶ 4 and Ex. A.) This refusal was based, in part, on the likelihood of confusion with three federal registrations owned by 24 Hour Fitness: "Apex Training Systems," "Apex Fitness Group," and "Apex." (Id.) In an attempt to resolve this issue, and because Apex Stores believed that it was the prior user of the "Apex" mark and thus should not have its registration blocked by 24 Hour Fitness' later use of confusingly similar trademarks, Apex Stores filed a Petition for Cancellation with the USPTO Trademark Trial and Appeal Board ("TTAB") on November 1, 2007. (Id. at ¶ 5.) This Petition requested the cancellation of 24 Hour Fitness' registrations because of the likelihood of confusion with the "Apex" marks owned and used by Plaintiffs and the dilution of their distinctive quality. (Id. at ¶¶ 5, 6 and Ex. B.) That same day, Plaintiffs' counsel sent a letter serving 24 Hour Fitness with a copy of the Petition for Cancellation. (Id. at ¶ 6 and Ex. B.)

**C. Settlement Negotiations and Procedural History**

On January 14, 2008, in an attempt to open negotiations between the parties regarding the trademarks at issue in the Petition for Cancellation, counsel for Plaintiffs participated in a telephone conference with counsel for 24 Hour Fitness. (Ottaviani Decl., at ¶ 7.) During this conference, counsel for 24 Hour Fitness confirmed that 24 Hour Fitness continued to use the "Apex" mark. (Id.) In an effort to explore possible settlement options, counsel for Plaintiffs inquired as to whether 24 Hour Fitness would be amenable to settling this dispute by issuing a

---

[1] As noted above, on April 30, 2008, Apex Stores transferred all of its "Apex" marks, including the application to register "Apex Companies" to Apex, LLC. (Ottaviani Decl., at ¶ 15.) This transfer was part of an ongoing plan to consolidate the intellectual property of the Apex affiliated that had been in place for over two years. (Id.)

letter of consent to Plaintiffs for the registration that was refused by the USPTO. (Id. at ¶ 7.) That same day, counsel for 24 Hour Fitness confirmed via e-mail that she would follow-up with 24 Hour Fitness regarding, among other things, "the possibility of issuing a letter of consent." (Id. at ¶ 7 and Ex. C.)

On January 29, 2008, in an attempt to further the settlement negotiations between the parties, counsel for Plaintiffs participated in another telephone conference with counsel for 24 Hour Fitness. (Id. at ¶ 8.) During this conference, counsel for 24 Hour Fitness confirmed that 24 Hour Fitness was not using the "Apex" mark for retail sales, and was instead only distributing its products in health and fitness centers, with no direct interface with individual consumers. (Id.) Counsel for 24 Hour Fitness again expressed that there was a possibility that 24 Hour Fitness would consent to the registration sought by Apex Stores. (Id.) In an e-mail correspondence dated February 5, 2008, counsel for 24 Hour Fitness further pursued this settlement option by inquiring as to whether Apex Stores was interested in the possibility of settling the proceeding pending before the USPTO TTAB by obtaining a letter of consent for its registration. (Id. at ¶ 9 and Ex. D.)

In a letter dated March 10, 2008, counsel for Plaintiffs informed counsel for 24 Hour Fitness that a letter of consent would be insufficient to resolve the outstanding issues regarding the trademarks given that 24 Hour Fitness seemed to be expanding its use of the "Apex" mark and using it in very similar ways to Plaintiffs. (Id. at ¶ 10 and Ex. E.) Notwithstanding this position, however, the letter unequivocally stated that Apex Stores remained interested in pursuing settlement negotiations, indicating that Apex Stores "hopes we can resolve this issue amicably," and "certainly continues to be open to settlement discussions." (Id.) In addition, counsel for Plaintiffs even suggested that the proceedings pending before the USPTO TTAB be

suspended to allow settlement discussions to continue. (Id.) In order to further the settlement negotiations between the parties, counsel for Plaintiffs proposed a resolution whereby 24 Hour Fitness would be permitted some period of time to continue using the "Apex" mark, while phasing it out and developing a new brand identity or adopting the 24 Hour Fitness brand, and also invited 24 Hour Fitness to offer other settlement proposals. (Id.)

While these settlement negotiations between the parties were continuing, on March 27, 2008, 24 Hour Fitness filed a Complaint against Apex Stores in the United States District Court for the Northern District of California seeking a declaration that its use of the "Apex" marks do not infringe on Apex Stores' marks (the "California Action"). (Id. at ¶ 17; Declaration of Britt L. Anderson in Support of 24 Hour Fitness' Motion to Dismiss ("Anderson Decl."), at ¶ 4 and Ex. A.) Despite its race to the courthouse, 24 Hour Fitness failed to provide any notice to Plaintiffs' counsel (or Apex Stores) that it had filed suit. (Ottaviani Decl., at ¶ 17.) In fact, as conceded by counsel for 24 Hour Fitness, Apex Stores was not served with a copy of this Complaint until over six weeks later, on May 12, 2008. (Anderson Decl., at ¶ 6.)

Notwithstanding the fact that it had already filed suit against Apex Stores, 24 Hour Fitness continued to pursue settlement discussions with Plaintiffs and create the appearance that settlement negotiations remained opened. In fact, in a letter dated April 11, 2008, counsel for 24 Hour Fitness informed Plaintiffs' counsel that "24 Hour Fitness continues to view a consent agreement under which the parties would agree to confine their activities under their APEX marks to their respective business areas as a potentially reasonable resolution of this matter." (Ottaviani Decl., at ¶ 11 and Ex. F.)

The settlement negotiations between the parties continued in subsequent e-mail correspondence dated April 24, 2008 through May 2, 2008. (Id. at ¶ 12 and Ex. G.) In an e-mail

dated April 24, 2008, counsel for 24 Hour Fitness contacted Plaintiffs' counsel to inquire as to when Apex Stores would respond to the April 11, 2008 letter. (Id.) In subsequent e-mail correspondence, counsel for the parties discussed the consent agreement proposed in the April 11, 2008 letter, and Plaintiffs' counsel continued to express Apex Stores' interest in pursuing a possible settlement, noting that either counsel could confer regarding the proposal, or Andrew Gates, President of Apex Stores, would speak directly to the President of 24 Hour Fitness in the hopes of resolving the matter. (Id.) During this time, counsel for Plaintiffs continually requested that counsel for 24 Hour Fitness provide the specific terms of the proposed consent agreement so that Apex Stores could properly consider the proposal. (Id.) Despite these requests, counsel for 24 Hour Fitness refused to provide any specific terms regarding the proposal and instead simply referred to the general statements contained in the April 11, 2008 letter. (Id.) Notwithstanding this failure to provide the specific terms of the proposal, however, counsel for 24 Hour Fitness continued to suggest that 24 Hour Fitness was interested in reaching a settlement and even requested a telephone conference to discuss the proposed consent agreement. (Id.)

On May 5, 2008, at the request of counsel for 24 Hour Fitness, counsel for the parties participated in a telephone conference in order to discuss the proposed consent agreement. (Id. at ¶ 13.) Despite the fact that counsel for 24 Hour Fitness had requested this conference, however, 24 Hour Fitness' counsel remained unwilling to provide any specific terms of their proposal. (Id.) Instead, counsel for 24 Hour Fitness confirmed that 24 Hour Fitness was using the "Apex" mark for retail sales, and, further, that it intended to continue doing so. (Id.)

Following this telephone conference, and despite the efforts of Plaintiffs' counsel to negotiate an amicable resolution to this matter with 24 Hour Fitness, Plaintiffs realized that it was necessary to resort to litigation. (Id. at ¶ 14.) Significantly, although 24 Hour Fitness had

claimed to be interested in executing a consent agreement, counsel for 24 Hour Fitness had continually failed to provide any specific terms regarding the proposed agreement that would limit their use of the "Apex" mark and allow Apex Stores' registration to be approved. (Id.) Instead, it became apparent to Plaintiffs that 24 Hour Fitness intended to push ahead with its use of the confusingly similar "Apex" marks on its website "apexfitness.com",in direct competition with the retail services of Apex At Home. (Id.) Prior to filing suit, Plaintiffs' counsel had never threatened that Apex, LLC, Apex At Home or Apex Stores would file a trademark infringement action against 24 Hour Fitness, or that any of those entities was even considering such litigation. (Id. at ¶ 18.)

Because 24 Hour Fitness made clear that it intended to pursue expansion of its use of the "Apex" mark into direct retail competition with Apex At Home, and because counsel for 24 Hour Fitness did not offer any terms for a joint use agreement that would limit its use of the marks in any way. Plaintiffs filed the above-captioned action against 24 Hour Fitness on May 5, 2008. (Id. at ¶ 15.) Plaintiffs' Complaint was served on 24 Hour Fitness on May 6, 2008. (See Executed Summons, Docket, Document No. 4). As noted above, Apex Stores was not served with a copy of the Complaint filed by 24 Hour Fitness in the California Action until May 12, 2008, approximately one week after Plaintiffs filed and served their Complaint on this action. (Anderson Decl., at ¶ 6.) On June 3, 2008, 24 Hour Fitness filed a First Amended Complaint in the California Action adding Apex, LLC and Apex At Home as defendants in that case.[2] (Id. at ¶ 5, and Ex. B.)

[2] On June 30, 2008, Apex Stores, Apex, LLC and Apex At Home (collectively, the "Apex Defendants") filed a motion to dismiss the First Amended Complaint filed in the California Action for lack of personal and subject matter jurisdiction. Specifically, Apex, LLC and Apex Stores argue that they lack sufficient contacts with California to justify the assertion of personal jurisdiction over them in the California Action. Similarly, Apex Stores argues that the action against it should be dismissed for lack of subject matter jurisdiction on the grounds that it no longer owns the trademarks at issue. In addition, all three Apex Defendants have moved to dismiss the First Amended Complaint on the grounds that there was no ripe and legitimate "case or controversy" between the parties at the time that 24

24 Hour Fitness has moved to dismiss Plaintiffs' Complaint in the instant action for improper venue under 28 U.S.C. § 1406(a) in view of the earlier filed California Action. In the alternative, 24 Hour Fitness argues that this action should be stayed pending resolution of the California Action.

## III. ARGUMENT

### A. The Court Should Deny 24 Hour Fitness' Motion to Dismiss Because the First-to-File Rule is Not Properly Applied to this Case.

24 Hour Fitness argues that this action should be dismissed for improper venue under 28 U.S.C. § 1406(a) in light of an earlier filed action brought by 24 Hour Fitness in the Northern District of California. This argument is misplaced, however, because, as set forth below, the first-to-file rule is not properly applied to the facts of this case.

Although there is a presumption favoring first-filed actions, it is well-established under the law of this jurisdiction that this presumption "is not a per se rule" to be applied in every case. Feinstein v. Brown, 304 F.Supp.2d 279, 283 (D.R.I. 2004) (quoting SW Indus., Inc. v. Aetna Cas. & Surety Co., 653 F.Supp. 631, 634 (D.R.I. 1987)). See also Kleinerman v. Luxtron Corp., 107 F.Supp.2d 122, 124 (D. Mass. 2000) ("The preference for the first-filed action to proceed is . . . not an inviolable rule of law."); Davox Corp. v. Digital Sys. Int'l, Inc., 846 F.Supp. 144, 147 (D. Mass. 1993) ("[G]iving priority to the first-filed case is not a rigid rule . . . ."). Instead, the decision of whether or not to give preference to the first-filed action in a given case "is an equitable decision made at the discretion of this Court." Nortek, Inc. v. Molnar, 36 F.Supp.2d 63, 69 (D.R.I. 1999). See also Feinstein, 304 F.Supp.2d at 283 (quoting

---

Hour Fitness filed the California Action, and, instead, 24 Hour Fitness filed an anticipatory lawsuit as a forum shopping maneuver. Finally, the Apex Defendants argue that this Court is the more appropriate forum to resolve the issues raised in 24 Hour Fitness' First Amended Complaint. (See Defendants' Notice of Motion and Motion to Dismiss Based on the Lack of Personal and Subject Matter Jurisdiction, and Memorandum of Points and Authorities Thereon ("California Motion to Dismiss"), filed in Case No. 4:08-cv-01681-SBA (N.D. Cal.), attached hereto as Exhibit 3.)

SW Indus., Inc., 653 F.Supp. at 634) ("[T]he preference for the first-filed action is . . . a policy governed by equitable considerations.").

In exercising this discretion, this Court has explicitly recognized two exceptions to the first-to-file rule. Specifically, this Court has held that a first-filed action should not be given preference where: (1) special circumstances justify giving priority to the second-filed action, or (2) there is a showing of balance of convenience in favor of the second action. Nortek, Inc., 36 F.Supp.2d at 69-70; SW Indus., Inc., 653 F.Supp. at 634. As set forth more fully below, both of these exceptions apply in the instant case. Accordingly, contrary to the arguments raised by 24 Hour Fitness, the first-to-file rule is not properly applied to this case, and the Court should give priority to the later-filed action pending in this Court.

**1. Special Circumstances Are Present Which Justify Giving Priority to this Action Over 24 Hour Fitness' California Declaratory Judgment Action.**

**a. The Standard Applicable to Exceptions to the First-to-File Rule**

It is well-established that one circumstance that justifies giving preference to a second-filed action is where the first-filed action was the result of a "preemptive 'race to the courthouse.'" Feinstein, 304 F.Supp.2d at 283; see Kleinerman, 107 F.Supp.2d at 124. In applying this exception to the first-to-file rule, courts have recognized that "[p]otential plaintiffs should be encouraged to attempt settlement discussions (in good faith and without dispatch) prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing." Davox Corp., 846 F.Supp. at 148 (quoting Columbia Pictures Indus., Inc. v. Schneider, 435 F.Supp. 742, 747 (S.D.N.Y. 1977)). In circumstances, such as those present in this case, where a party purports to negotiate in good faith toward a potential settlement to avoid litigation but files suit on its own, or acts to cut off a potential claimant's imminent filing by "literally sprinting to the courthouse," courts in

the First Circuit have recognized that "the first-filed suit is clearly motivated by the [defendant's] desire to secure the best forum and deference to a later-filed action may be appropriate." The Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F.Supp.2d 12, 16 (D. Mass. 2002); see also Veryfine Prods., Inc. v. Phlo Corp., 124 F.Supp.2d 16, 22 (D. Mass. 2000).

Contrary to 24 Hour Fitness' assertion that the "first-to-file rule is frequently applied by the First Circuit where, as here, the first-filed action is one for declaratory relief" (24 Hour Fitness Motion to Dismiss, at 6-7), district courts in the First Circuit have recognized that special circumstances justifying giving preference to a later-filed action are often present where the first-filed suit is a declaratory judgment action for non-infringement. See Kleinerman, 107 F.Supp.2d at 124-25; Veryfine Prods., Inc., 124 F.Supp.2d at 22. Indeed, courts in this Circuit have held that "the first-filed suit is particularly suspect where a party . . . has brought a declaratory judgment action for non-infringement." Veryfine Prods., Inc., 124 F.Supp.2d at 22. See also Kleinerman, 107 F.Supp.2d at 124-25 (finding that the first-filed rule will not be dispositive in infringement cases where alleged infringer is notified of suspected infringement, good faith negotiations ensue and the alleged infringer then filed a declaratory judgment action in another forum). In such cases, subsequent actions filed within a reasonable time after the first-filed action are entitled to some deference. See Kleinerman, 107 F.Supp.2d at 124-25; Veryfine Prods, Inc., 124 F.Supp.2d at 22 (noting that, in such case, "the winner of the race to the courthouse should not enjoy the presumption of preferable venue").

Although 24 Hour Fitness purports to rely on case law from district courts in California to support its contention that the first-to-file rule requires dismissal of this action, the decisions of that Court make equally clear that the first-to-file rule is not to be applied in circumstances such as those present in this case. Specifically, the Northern District of California, where 24

Hour Fitness filed its gun-jumping declaratory judgment action, recognizes that the first-to-file rule should not be applied in every case. Z-Line Designs, Inc. v. Bell'o Int'l, Inc., 218 F.R.D. 663, 665 (N.D. Cal. 2003) (noting that district courts can dispense with the first-to-file rule in the exercise of their discretion). See also Mediostream, Inc. v. Priddis Music, Inc., No. C07-2127-PJH, 2007 WL 2790688, at *2 (N.D. Cal. Sept. 24, 2007). Like the district courts of the First Circuit, the Northern District of California makes an exception to the first-to-file rule in cases such as this one where the first-filed suit was initiated in bad faith, as an anticipatory suit, or as a forum shopping maneuver. Z-Line Designs, Inc., 218 F.R.D. at 665. See also Hubb Sys., LLC v. Microdata GIS, Inc., No. C07-2677-BZ, 2007 WL 2221077, at *1 (N.D. Cal. Aug. 2, 2007). Similarly, the Northern District of California also recognizes that "[a]pplication of the first to file rule in such situations would thwart settlement negotiations, encouraging intellectual property holders to file suit rather than communicate with an alleged infringer." Z-Line Designs, Inc., 218 F.R.D. at 665.

**b. 24 Hour Fitness' California Declaratory Judgment Action Was an Anticipatory Suit Filed as a Forum Shopping Tactic, and is Not Entitled to the Benefit of the First-to-File Rule.**

The facts of this case unequivocally demonstrate that 24 Hour Fitness' race to file its declaratory judgment action was nothing more than a forum shopping maneuver designed to secure jurisdiction in its home forum of California should the parties' negotiations regarding the potential for joint use of the marks at issue not result in an agreement and a lawsuit become necessary. 24 Hour Fitness has no good faith explanation for rushing to file that suit, but then refusing to inform Plaintiffs' counsel about the complaint, failing to make any effort to serve the complaint on Apex Stores or otherwise pursue its lawsuit for over six weeks, and all the while continuing negotiations with Plaintiffs' counsel concerning a possible agreement for joint use of

the relevant marks. (See Ottaviani Decl. at ¶¶ 12, 13, 17.)

In this regard, the facts presented here are similar to the facts underlying the case of Kleinerman v. Luxtron Corp., 107 F.Supp.2d 122. In that patent infringement action, the District Court for the District of Massachusetts denied the motion of an alleged infringer to stay or dismiss a Massachusetts suit in deference to an earlier-filed California declaratory judgment action, finding that the alleged infringer had "pounce[d] preemptively" in filing its complaint while the parties were still engaged in settlement negotiations and before they had reached an impasse. Id. at 122, 124, 126. Similarly, here, 24 Hour Fitness "pounce[d] preemptively" by filing its declaratory judgment action in the midst of settlement negotiations, and before any impasse had been reached. Notably, throughout the parties' settlement discussions, Plaintiffs never explicitly or implicitly threatened to sue 24 Hour Fitness for infringement. (Ottaviani Decl., at ¶¶ 10, 12, 13, 18 and Exs. E, G.) In fact, Plaintiffs' counsel repeatedly expressed the desire to reach an agreement regarding the parties' respective uses of the "Apex" marks. (Id.)

24 Hour Fitness mischaracterizes the March 10, 2008 letter from Plaintiffs' counsel as indicating that Plaintiffs were unwilling to compromise and constituting "an apparent rejection of any settlement". (24 Hour Fitness Motion to Dismiss, at 3, 4.) A plain reading of that letter reveals that 24 Hour Fitness has manufactured a "spin" on that letter in a transparent effort to justify its intentional subterfuge—filing a lawsuit, while purporting to negotiate to avoid litigation. (Id. at ¶ 10 and Ex E.) Plaintiffs' counsel's letter clearly and unequivocally stated that Plaintiffs remained interested in pursuing a settlement of the dispute, and even suggested a stay of the TTAB proceeding to cancel 24 Hour Fitness' marks and proposed a possible resolution. (Ottaviani Decl., at ¶ 10 and Ex. E.) Moreover, 24 Hour Fitness' new found contention that it believed the March 10 letter signaled Plaintiffs' unwillingness to negotiate a settlement is

entirely inconsistent with 24 Hour Fitness' conduct after filing its complaint. For example, if 24 Hour Fitness actually believed that Plaintiffs were intent on litigating, instead of negotiating a settlement, why did 24 Hour Fitness remain so steadfastly silent about having filed its complaint and why did it not serve the complaint and seek to proceed on the litigation it now claims to have believed that Plaintiffs wanted?

In fact, after filing the declaratory judgment complaint, 24 Hour Fitness' counsel continued to actively engage in settlement discussions with counsel for Plaintiffs regarding a possible consent agreement—clearly indicating that 24 Hour Fitness well knew that Plaintiffs had not abandoned settlement discussions. (Id. at ¶¶ 11, 12, 13.) Specifically, counsel for 24 Hour Fitness continued to negotiate as follows after the filing of its complaint:

- In a letter dated April 11, 2008, counsel for 24 Hour Fitness stated that: "24 Hour Fitness continues to view a consent agreement under which the parties would agree to confine their activities under the APEX marks to their respective business areas as a potentially reasonable resolution of this matter. Let me know if your client is interested in discussing a consent agreement on this basis." (Id. at ¶ 11 and Ex. F.)

- On April 24, 2008, counsel for 24 Hour Fitness contacted Plaintiffs' counsel via e-mail to inquire as to when Apex Stores would respond to this proposal. (Id. at ¶ 12 and Ex. G.)

- On April 30, 2008, counsel for 24 Hour Fitness wrote to counsel for Plaintiffs stating that 24 Hour Fitness wanted "to determine whether or not your client is interested in the co-existence terms that we outlined in our last letter," and requested that Plaintiffs' counsel participate in a conference call regarding the proposed consent agreement. (Id.)

- On May 1, 2008, counsel for 24 Hour Fitness again referenced the possible consent agreement, stating that "[t]he terms at this stage consist of a consent provided to your client in context of the issues we have raised regarding 24 Hour Fitness' trademark rights as outlined in our letter. (Id.)

Accordingly, there was no justifiable case or controversy pending between the parties when the California Action was filed and, thus, it is clear that 24 Hour Fitness filed that

anticipatory suit, without any notice to Plaintiffs' counsel, for the sole purpose of securing jurisdiction in its home forum of California. It is axiomatic that the "first-to-file" rule should not be applied in such circumstances. Auburn Mfg., Inc. v. Steiner Indus., 493 F.Supp.2d 123, 134 (D. Me. 2007) ("[T]he first-to-file rule . . . should not serve as a basis for this Court to exercise its discretion to grant a motion to dismiss or transfer based on that rule when the first-filed lawsuit is an anticipatory lawsuit.").

Although 24 Hour Fitness has argued that "whether or not the owner of the first-filed action serves the complaint has no effect on the application of the first-filed rule," this is simply not the case. (24 Hour Fitness' Motion to Dismiss, at 13.) Instead, the fact that 24 Hour Fitness quietly sat on its Complaint in the California Action for over six weeks and did not serve the Complaint, or take any other actions to pursue that lawsuit, until *after* Apex, LLC and Apex At Home had filed *and* served their Complaint in this action, highlights the fact that 24 Hour Fitness did not consider its own lawsuit ripe to move forward with when filed. 24 Hour Fitness' own belief that its declaratory judgment action should not be pursued when filed further supports the conclusion that the California Action was nothing more than a tactical maneuver to secure 24 Hour Fitness' choice of forum should there be reason to go forward with litigation in the future. (See Anderson Decl., at ¶ 6.)

In this regard, the procedural facts of this case are virtually identical to the facts underlying the case of Lexington Ins. Co. v. City of Phoenix, Arizona, No. 96-10319, 1996 WL 463672, at *2 (D. Mass. July 31, 1996), in which the court rejected a similar maneuver. In that case, the plaintiff, realizing that it was about to be sued by the defendant, commenced a declaratory judgment action in Massachusetts, but did not provide any notice of the suit to the defendant. Id. The defendant then filed a second action in Arizona, at which time the plaintiff in

the Massachusetts suit finally served its complaint on the defendant. Id. Like 24 Hour Fitness, the plaintiff in the first-filed action sought to have the later-filed suit stayed pending resolution of the earlier-filed action, arguing that the defendant was limited to bringing its claims as counterclaims in the first-filed action. (See 24 Hour Fitness' Motion to Dismiss, at 11.) Lexington Ins. Co., 1996 WL 463672, *2. Based on these strategic maneuvers, which are virtually the same as 24 Hour Fitness' actions in this case, the court found that the first-filed suit was an anticipatory action and that the plaintiff in that action was "guilty of racing to the courthouse," and it transferred the case to the jurisdiction where the second-filed action was pending. Id. at *2, *3 ("Such a pre-emptive strike misuses the declaratory judgment action."). See also Sea Hunt Corp. v. O.S. Debraak, Ltd., No. 86-2758, 1986 WL 15476, at *2 (D. Mass. Dec. 23, 1986) (finding that an earlier-filed action, that was not served until after the later-filed action, should not be considered a prior action that should be given preference because service of process in the two actions was completed at substantially the same time).

As this Court has previously recognized, it is immaterial that 24 Hour Fitness never explicitly promised to hold off on filing a declaratory judgment action while the parties negotiated; instead, it is sufficient that Plaintiffs reasonably held off on filing suit in Rhode Island because the parties were still engaged in negotiations. Nortek, 36 F.Supp.2d at 70 (finding sufficient special circumstances to justify disregarding the first-filed rule even though there was no explicit promise not to file a declaratory judgment action while negotiations ensued). In addition, 24 Hour Fitness has not, and cannot, argue that there was any time-sensitivity to the registration issues in dispute, or that it would have lost any rights if it waited for Plaintiffs to file suit. Id. See also Lexington Ins. Co., 1996 WL 463672, at *2 (declining to adhere to first-to-file rule where there was no evidence that the plaintiff in the first-filed suit

"was motivated to bring suit by any concern about the possibility of uncertainty or delay"). Instead, as set forth above, 24 Hour Fitness' secretly filed its lawsuit in California while purporting to engage in good faith negotiations with Plaintiffs' merely in an effort to secure its home forum in the event of a future lawsuit. Compare Nortek, 36 F.Supp.2d at 70. Granting 24 Hour Fitness' Motion to Dismiss would reward litigation gamesmanship, and wrongfully deprive Plaintiffs of their choice of a forum to resolve their affirmative claims against 24 Hour Fitness. This Court should exercise its equitable discretion to avoid rewarding such conduct.

**2. The Balance of Convenience in this Case Favors the Second-Filed Action**

Federal courts also have recognized that the first-to-file rule should be disregarded where the balance of convenience favors allowing the later-filed action to proceed. Feinstein, 304 F.Supp.2d at 283; Kleinerman, 107 F.Supp.2d at 125. In order to establish that this balance tips in favor of California, 24 Hour Fitness must show that Plaintiffs' choice of forum in Rhode Island is "substantially more inconvenient than the alternative proposed by it." Kleinerman, 107 F.Supp.2d at 125. In measuring the balance of this convenience, courts look to the following factors: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of witnesses and the location of documents; (4) any connection between the forum and the issues; (5) the law to be applied; and (6) the state or public interest at stake. Feinstein, 304 F.Supp.2d at 283; Kleinerman, 107 F.Supp.2d at 125. Again, 24 Hour Fitness' reliance on case law from California does not support its position that the first-to-file rule should apply to this case; the Northern District of California also recognizes an exception to the first-to-file rule where the balance of conveniences favors the second-filed action. Z-Line Designs, Inc., 218 F.R.D. at 665. See also Intuitive Surgical, Inc. v. California Inst. of Tech., No. C07-0063-CW,

2007 WL 1150787, at *2 (N.D. Cal. April 18, 2007); Sony Computer Entm't Am., Inc., No. C-06-06603-CW, 2007 WL 781969, at *2 (N.D. Cal. March 13, 2007).

24 Hour Fitness cannot meet its burden of establishing that Plaintiffs' choice of forum in Rhode Island is substantially more inconvenient than the choice of forum in California. See Kleinerman, 107 F.Supp.2d at 125. As an initial matter, there is a presumption in this case in favor of Plaintiffs' chosen forum in Rhode Island. Id. This is especially true here given that the chosen forum is Plaintiffs' home jurisdiction. Id. Moreover, although 24 Hour Fitness argues that "[t]he parties' respective convenience factors are in equipoise," this is simply not the case. (24 Hour Fitness' Motion to Dismiss, at 14.) Instead, the convenience of witnesses and the location of documents clearly favors allowing the instant action to proceed in this Court. Plaintiffs' claims in this action against 24 Hour Fitness include claims based on common law trademark rights and unfair competition. These claims will require Plaintiffs to present evidence regarding the historical use of their "Apex" marks, the affiliation that they have created in the minds of consumers between these marks and their retail services and products, and the likelihood of confusion resulting from 24 Hour Fitness' new, competitive retail use of the identical marks. For the most part, evidence on these issues will come from documents and witnesses that are present here in Rhode Island. By contrast, the full history of 24 Hour Fitness' use of the "Apex" marks is not at issue, so the California-based evidence that will be material to the resolution of this dispute simply is not as voluminous as the Rhode Island based evidence.

In addition, the state and public interests at stake favor proceeding with this suit in Rhode Island to resolve all issues between the parties. As set forth above, 24 Hour Fitness filed this anticipatory lawsuit in bad faith while it purported to participate in settlement discussions with Plaintiffs in order to secure its choice of forum. Rewarding such conduct would undermine the

public interest generally, and the federal courts' interest specifically, in "promoting settlements and negotiations outside the courthouse". Nortek, Inc., 36 F.Supp.2d at 70. See also Davox Corp., 846 F.Supp. at 148 (noting that potential defendants should not be permitted to take advantage of the fact that the potential plaintiff "responsibly deferred filing potentially protracted and expensive litigation and, indeed, was perhaps misled into believing it would not be prejudiced by doing so"). If 24 Hour Fitness were to have its way, in order to avoid being stripped of their choice of forum to resolve a potential infringement claim in the future, trademark owners such as Plaintiffs will have to avoid settlement negotiations and sue immediately. As courts in the First Circuit have recognized, "[a] system that permits a potential defendant to gain from anticipatory filing increases the burden on all districts as parties rush to file suit in their home districts rather than attempting to negotiate their differences." Lexington Ins. Co., 1996 WL 463672, at *2, *3 (noting that, "in the First Circuit as in others, the importance of discouraging anticipatory litigation is widely recognized").

In addition, as set forth more fully below, allowing this action to proceed promotes judicial economy and efficiency because the instant action is more comprehensive than the California Action and, thus, several of Plaintiffs' claims, including all claims involving Apex, LLC, will need to proceed in this Court regardless of how the California court may rule. See Kleinerman, 107 F.Supp.2d at 126 (considering judicial economy in evaluating the balance of convenience); McGlynn v. The Credit Stores, Inc., 234 B.R. 576, 581 (Bankr. D.R.I. 1998) (declining to apply the first-to-file rule where "although there is some overlap of issues, the issues in one case are not necessarily dispositive of those in the other").

**B. The Court Should Deny 24 Hour Fitness' Alternative Motion to Stay this Action Pending Resolution of the California Action Because the California Action Will Not Resolve All of the Claims Raised in this Lawsuit.**

In the alternative, 24 Hour Fitness' Motion to Dismiss asks this Court to stay proceedings on Plaintiffs' Complaint in this Court pending resolution of the California Action. A stay is inappropriate in this case, however, because the California Action will not resolve all of the claims raised by Plaintiffs' Complaint.

Contrary to 24 Hour Fitness' unsupported contention (Motion to Dismiss, at 1), Plaintiffs' claims filed in this Court go well beyond the limited issues presented in the California Action. Here, Plaintiffs have asserted claims against 24 Hour Fitness for: infringement of their registered trademarks under section 32 of the Lanham Act, 15 U.S.C. § 1114 (Count 1); false designation of origin under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count 2); unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count 3); common law unfair competition (Count 4); and common law service mark infringement (Count 5); and cancellation of 24 Hour Fitness' "Apex" marks (Prayer for Relief, ¶ G). By contrast, the California Action is limited to a single claim seeking a declaration of non-infringement ***only*** with respect to Plaintiffs' ***federally registered*** trademarks. Specifically, 24 Hour Fitness' First Amended Complaint asks for "a judicial declaration that its use of its APEX marks do [sic] not infringe on Defendants' marks." The term "Defendants' marks" is narrowly defined to include only the Plaintiffs' federally registered trademarks. (See Anderson Decl., at Ex. B, ¶¶ 1, 10, 30(a).)

Accordingly, at most, if it were allowed to proceed to judgment first, the California Action would only resolve Count 1 of Plaintiffs' Complaint in this Court—claiming infringement of their federally registered trademarks—and even that would only be a partial

resolution of Count 1, should the Northern District of California declare that 24 Hourt Fitness' does infringe Plaintiffs' federally registered marks, as that declaration will not resolve what damages and other relief Plaintiffs' will be entitled to as a result of that infringement. The California Action will *not* resolve Plaintiffs' claims based on common law infringement, unfair competition (to the extent these claims are based on their common law marks), or their claim for cancellation of 24 Hour Fitness' federal registrations. Counts 2 through 5 of Plaintiffs' Complaint, as well as their claim for cancellation of 24 Hour Fitness' "Apex" marks, will need to be tried here, irrespective of the outcome of 24 Hour Fitness' declaratory judgment action in California.

Under these circumstances, the first-to-file rule should not be relied upon to stay this action. See McGlynn, 234 B.R. at 580 ("Cases in which the first-to-file rule has been applied require a substantial overlap of parties and issues."). See also Shapiro v. Jupiterimages Corp., No. C-07-5540-PJH, 2008 WL 183511, at *1 (N.D. Cal. Jan. 18, 2008) (disregarding first-to-file rule where first-filed action alleged only a single count for declaratory relief and "would not terminate the entirety of the dispute between the parties," while later-filed action alleged multiple statutory and common law claims).

24 Hour Fitness attributes importance to the fact that both of the Plaintiffs in this litigation, Apex, LLC and Apex At Home, have been named as defendants in the California Action. But, 24 Hour Fitness did not name those entities as parties to the California Action until after being served with this Complaint and learning that the sole defendant it precipitously named when rushing to file its original complaint has no ongoing interest in the trademark rights that are the subject of its request for declaratory relief. More importantly, Apex, LLC has moved to dismiss the California Action against it for lack of personal jurisdiction, given its complete

lack of contacts with the State of California. (See California Motion to Dismiss, at 6-16.) Accordingly, it is likely that Apex, LLC will be dismissed from the California Action and will instead need to proceed on all of its claims against 24 Hour Fitness in this Court. See McGlynn, 234 B.R. at 581 (noting that the first-to-file rule is not applied "where severance would be required . . . because personal jurisdiction over one of the defendants is unlikely in the transferee court"). Given the fact that many of Plaintiffs' claims will need to proceed in this Court irrespective of the outcome of the California Action, no purpose would be served to staying this proceeding, as requested by 24 Hour Fitness, other than to allow that Defendant to delay and frustrate Plaintiffs' efforts to pursue their claims. That is not a valid basis to impose a stay.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that this Court deny 24 Hour Fitness' Motion to Dismiss, or Alternatively, Stay Proceedings.

APEX, LLC and APEX AT HOME, LLC,

By its Attorneys,

/s/ Heather A. Pierce
Raymond M. Ripple (#6489)
Heather A. Pierce (#7345)
Edwards Angell Palmer & Dodge LLP
2800 Financial Plaza
Providence, RI 02903
(401) 274-9200
(401) 276-6611 (Fax)

and

Steven M. Cowley (*pro hac vice*)
Carrie Webb Olson (*pro hac vice*)
Edwards Angell Palmer & Dodge LLP
111 Huntington Avenue
Boston, MA 02199-7613
(617) 239-0100
(617) 227-4420 (Fax)
scowley@eapdlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2008, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Heather A. Pierce