# EXHIBIT 2 (Part 1)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| APEX, LLC,<br>APEX AT HOME, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>24 HOUR FITNESS USA, INC.,<br><br>Defendant. | C.A. No. 08-169-ML |

**DECLARATION OF JOHN E. OTTAVIANI**

I, John E. Ottaviani, on oath declare as follows:

1. I am a Partner in the Intellectual Property Group at the law firm of Edwards Angell Palmer and Dodge LLP. I am counsel for Apex, LLC ("Apex LLC") and Apex At Home, LLC ("Apex at Home") (collectively, "Plaintiffs"), who have filed the above-captioned action.

2. The matters set forth in this declaration are based upon my personal knowledge and my review of documents reflecting communications with counsel for Defendant 24 Hour Fitness USA, Inc. ("24 Hour Fitness") regarding the "Apex" trademarks at issue in this action. The information contained in this declaration is in addition to and in support of the information contained in Plaintiffs' Opposition to 24 Hour Fitness' Motion to Dismiss, or Alternatively, Stay Proceedings.

3. I represent Apex LLC and Apex At Home, as well as their affiliate Apex Stores, LLC ("Apex Stores"), in connection with trademark matters generally, and in particular with respect to an application to the United States Patent and Trademark Office ("USPTO") to register the service mark "Apex Companies." Prior to submitting this application, Apex Stores and some

of its affiliated companies had already been using the "Apex Companies" mark, and owned U.S. registrations for a number of other "Apex" marks. In fact, Apex Stores and its predecessors have used the "Apex" mark, as well as other marks incorporating the word "Apex," in conjunction with retail services since as early as 1942, and in conjunction with automotive services and products since as early as 1924.

4. In response to this application, the USPTO advised Apex Stores that its application for registration was refused based, in part, on the likelihood of confusion with three registrations owned by 24 Hour Fitness: "Apex Training Systems," "Apex Fitness Group," and "Apex." A true and accurate copy of the Office Action of the USPTO refusing Apex Stores' application is attached hereto as Exhibit A.

5. In an attempt to resolve this issue, and because Apex Stores believes that it was the prior user of the "Apex" mark and thus should not have its registration blocked by 24 Hour Fitness's later use of confusingly similar trademarks, Apex Stores filed a Petition for Cancellation with the USPTO seeking cancellation of 24 Hour Fitness' blocking registrations.

6. On November 1, 2007, I sent 24 Hour Fitness a letter enclosing a copy of the Petition for Cancellation that was filed that same day with the USPTO Trademark Trial and Appeal Board ("TTAB"). In the letter, I informed 24 Hour Fitness that Apex Stores was seeking the cancellation of the three 24 Hour Fitness registrations listed above. A true and accurate copy of this November 1, 2007 letter and the Petition for Cancellation is attached hereto as Exhibit B.

7. On January 14, 2008, in an attempt to open negotiations between the parties regarding the trademarks at issue in the Petition for Cancellation, and as required by the TTAB rules of procedure, I participated in a telephone conference with Christine Klenk ("Klenk") of Manatt, Phelps & Phillip, LLP ("Manatt"), counsel for 24 Hour Fitness. During this conference,

Klenk confirmed that 24 Hour Fitness continued to use the "Apex" mark. Klenk explained that Apex Fitness is a subsidiary of 24 Hour Fitness that sells vitamins online and in health clubs, and referred me to the website apexfitness.com. During the conference, I inquired as to whether 24 Hour Fitness was distributing its vitamins to third-party health clubs, or only to its own health clubs. In an attempt to explore possible settlement options, I also inquired as to whether 24 Hour Fitness would be amenable to settling this dispute by issuing a letter of consent to our client for the registration that was refused by the USPTO. Klenk stated that she would speak with 24 Hour Fitness regarding both of these matters. In an e-mail correspondence sent later that same day, Klenk confirmed that she would follow-up with 24 Hour Fitness "regarding its use of the APEX mark for 'distributorship featuring vitamins & fitness programs,' and the possibility of issuing a letter of consent." A true and accurate copy of this January 14, 2008 e-mail correspondence is attached hereto as Exhibit C.

8. On January 29, 2008, in furtherance of the negotiations between the parties, I participated in another telephone conference with Klenk and Britt Anderson ("Anderson"), also of Manatt. During this call, Klenk and Anderson confirmed that 24 Hour Fitness, through Apex Fitness, had been using the "Apex" mark for a number of years for distribution in its own health clubs, as well as third-party health clubs and fitness and nutrition centers. Klenk and Anderson expressed their opinion that cancellation of the registrations was inappropriate, and that 24 Hour Fitness was prepared to defend its use of the marks. Klenk and Anderson further stated that 24 Hour Fitness was not using the mark in retail stores, but instead was only distributing its products to health and fitness centers, with no direct interface with individual consumers. Accordingly, based on these representations of Klenk and Anderson, we believed that 24 Hour Fitness was not using the "Apex" mark for retail sales. Klenk and Anderson further stated

during this conference that there was a possibility that 24 Hour Fitness would consent to Apex Stores' registration of its "Apex Companies" service mark.

9. On February 5, 2008, Klenk contacted me via e-mail to inquire again as to whether Apex Stores was interested in the possibility of settling the proceeding by obtaining a letter of consent for its registration. A true and accurate copy of this February 5, 2008 e-mail correspondence is attached hereto as Exhibit D.

10. On March 10, 2008, I sent a letter to Klenk informing her of Apex Stores' position that a letter of consent would be insufficient to resolve the outstanding issues in this matter. In the letter, I expressed Apex Stores' concern that 24 Hour Fitness appeared to be expanding its use of the "Apex" mark and using it in very similar ways to Apex Stores. Notwithstanding this position, however, I clearly indicated that Apex Stores remained interested in pursuing settlement negotiations, noting that Apex Stores "hopes we can resolve this issue amicably" and "certainly continues to be open to settlement discussions." In fact, I suggested that the parties suspend the proceedings pending before the USPTO TTAB so that such discussions could continue. In order to further the settlement negotiations between the parties, I proposed a resolution whereby 24 Hour Fitness would be permitted some period of time to continue using the Apex mark, while phasing it out and developing a new brand identity or adopting the 24 Hour Fitness brand. I also welcomed Klenk and 24 Hour Fitness to offer other settlement proposals. A true and accurate copy of my March 10, 2008 letter is attached hereto as Exhibit E.

11. In a letter dated April 11, 2008, Anderson responded to my March 10, 2008 letter by attacking the merits of Apex Stores' claims regarding the "Apex" mark. Despite these contentions, however, Anderson stated that "24 Hour Fitness continues to view a consent

agreement under which the parties would agree to confine their activities under their APEX marks to their respective business areas as a potentially reasonable resolution of this matter," suggesting that 24 Hour Fitness remained interested in negotiating a settlement of the dispute. A true and accurate copy of the April 11, 2008 letter is attached hereto as Exhibit F.

12. On April 24, 2008, Anderson contacted me via e-mail to inquire as to when Apex Stores would respond to his April 11th letter. In subsequent e-mail correspondence dated April 29th through May 2nd, Anderson and I discussed the consent agreement proposed in the April 11th letter. In these e-mails, I informed Anderson that I would speak with him regarding the proposal or, in the alternative, Andrew Gates, the President of Apex Stores, was willing to speak directly with the President of 24 Hour Fitness in the hopes of resolving the matter. I also requested that Anderson provide the specific terms of the proposed consent agreement so that Apex Stores could properly consider the proposal. Despite my requests, Anderson refused to provide any specific terms, and instead simply referred to the general statements contained in his April 11th letter. Notwithstanding his failure to provide the specific terms of his proposal, however, Anderson continued to suggest that 24 Hour Fitness was interested in reaching a settlement and, in fact, requested a telephone conference to discuss the proposed consent agreement. In fact, Anderson specifically stated that 24 Hour Fitness was looking to determine whether or not Apex Stores was interested in the consent agreement referenced in the April 11th letter, suggesting that the settlement negotiations remained opened. A true and accurate copy of this e-mail correspondence, dated April 24th through May 2nd, is attached hereto as Exhibit G.

13. On May 5, 2008, I participated in a telephone conference with Anderson and Susan Hollander ("Hollander"), also of Manatt. Despite Anderson's request that we schedule this conference in order to discuss his proposed consent agreement, both Anderson and

Hollander were unwilling to provide any specific terms for joint use of the marks, and instead kept referring to the general statements contained in the April 11th letter. In addition, Anderson confirmed during the call that 24 Hour Fitness was using the "Apex" mark for retail sales, and that it did not intend to stop this use. In this conversation, in response to a comment from Ms. Hollander, I also clearly stated that my March 10th letter was a settlement proposal and an attempt to resolve this matter without further litigation.

14. Despite our efforts to negotiate an amicable resolution to this matter with 24 Hour Fitness, we eventually realized that it was necessary to resort to litigation. Although 24 Hour Fitness claimed to be interested in a consent agreement, counsel for 24 Hour Fitness had failed to provide any specific terms regarding the proposed agreement that would limit their use of the "Apex" mark and allow Apex Stores' registration to be approved. Instead, it became apparent that 24 Hour Fitness intended to push ahead with the use of confusingly similar "Apex" marks, on its apexfitness.com site, in direct competition with the retail services of Apex LLC's affiliate Apex At Home.

15. On April 30, 2008, Apex Stores transferred all of its "Apex" marks, including the application to register "Apex Companies" to a separate corporate affiliate, Apex LLC. This transfer was part of an ongoing plan to consolidate the intellectual property of the Apex affiliates that had been in place for over two years.

16. Because 24 Hour Fitness had expanded its use of the mark into direct competition with Apex at Home, and because counsel for 24 Hour Fitness did not offer any settlement proposal that was satisfactory to our client, on May 5, 2008, Apex LLC and Apex At Home filed the above-captioned action against 24 Hour Fitness.

17. Despite our ongoing communications concerning a potential agreement to resolve Apex Stores' Petition for Cancellation filed with the TTAB without the need for further litigation, counsel for 24 Hour Fitness never mentioned to me (or otherwise informed Apex Stores, to my knowledge) that it filed its declaratory judgment action against Apex Stores in the United States District Court for the Northern District of California prior to Apex LLC and Apex At Home filing their Complaint in this Court and serving it on 24 Hour Fitness.

18. Throughout all of my communications with 24 Hour Fitness's counsel after filing the Petition for Cancellation with the TTAB, I never threatened that Apex Stores, Apex LLC or Apex at Home would file a trademark infringement action against 24 Hour Fitness, or that any of those entities was considering such litigation.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 2nd day of July, 2008.

John E. Ottaviani

# EXHIBIT A

To: Apex Stores, LLC (trademark@eapdlaw.com)

Subject: TRADEMARK APPLICATION NO. 78928022 - APEX COMPANIES - 42707/65893

Sent: 12/15/06 11:09:32 AM

Sent As: ECOM111@USPTO.GOV

Attachments: Attachment - 1
Attachment - 2
Attachment - 3
Attachment - 4
Attachment - 5
Attachment - 6
Attachment - 7
Attachment - 8
Attachment - 9
Attachment - 10
Attachment - 11
Attachment - 12
Attachment - 13
Attachment - 14
Attachment - 15
Attachment - 16
Attachment - 17
Attachment - 18
Attachment - 19
Attachment - 20
Attachment - 21
Attachment - 22
Attachment - 23
Attachment - 24
Attachment - 25
Attachment - 26
Attachment - 27
Attachment - 28
Attachment - 29
Attachment - 30
Attachment - 31
Attachment - 32

# UNITED STATES PATENT AND TRADEMARK OFFICE

**SERIAL NO:** 78/928022

**APPLICANT:** Apex Stores, LLC

*78928022*

**CORRESPONDENT ADDRESS:**
JOHN E. OTTAVIANI
EDWARDS ANGELL PALMER & DODGE LLP
PO BOX 55874
BOSTON, MA 02205-5874

**RETURN ADDRESS:**
Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA 22313-1451

**MARK:** APEX COMPANIES

**CORRESPONDENT'S REFERENCE/DOCKET NO:** 42707/65893

**CORRESPONDENT EMAIL ADDRESS:**
trademark@eapdlaw.com

Please provide in all correspondence:

1. Filing date, serial number, mark and applicant's name.
2. Date of this Office Action.
3. Examining Attorney's name and Law Office number.
4. Your telephone number and e-mail address.

## OFFICE ACTION

**RESPONSE TIME LIMIT**: TO AVOID ABANDONMENT, THE OFFICE MUST RECEIVE A PROPER RESPONSE TO THIS OFFICE ACTION WITHIN 6 MONTHS OF THE MAILING OR E-MAILING DATE.

**MAILING/E-MAILING DATE INFORMATION:** If the mailing or e-mailing date of this Office action does not appear above, this information can be obtained by visiting the USPTO website at http://tarr.uspto.gov/, inserting the application serial number, and viewing the prosecution history for the mailing date of the most recently issued Office communication.

Serial Number 78/928022

The assigned trademark examining attorney has reviewed the referenced application and has determined the following:

**Trademark Act 2(d) Refusal to Register**

The stated refusal refers to the following goods and/or services and does not bar registration for the other goods and/or services: ***Promoting the goods and services of others by placing advertisements and promotional displays in an electronic site accessed through computer networks; providing an on-line advertising guide featuring the goods and services of others; electronic retailing services and ordering services via computer featuring a wide variety of merchandise; Retail store and mail order services, featuring, a wide variety of merchandise; arranging for others the repair, service and replacement of a wide variety of general merchandise and vehicles; retail automobile parts and accessories stores; retail store services featuring customer pick-up and/or payment of newly purchased or repaired merchandise; pick up and delivery services; legal, business, advertising, marketing and management consulting services.***

Registration of the proposed mark is refused because of a likelihood of confusion with the marks in U.S. Registration Nos. 2431006, 2701627, 2703428, 2657874, 2936205, 3129631 and 3132658. Trademark Act Section 2(d), 15 U.S.C. §1052(d); TMEP §§1207.01 *et seq*. See the enclosed registration.

Trademark Act Section 2(d) bars registration where an applied-for mark so resembles a registered mark that it is likely, when applied to the goods and/or services, to cause confusion, mistake or to deceive the potential consumer as to the source of the goods and/or services. TMEP §1207.01. The Court in *In re E. I. DuPont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973), listed the principal factors to consider in determining whether there is a likelihood of confusion. Among these factors are the similarity of the marks as to appearance, sound, meaning and commercial impression, and the relatedness of the goods and/or services. The overriding concern is to prevent buyer confusion as to the source of the goods and/or services. *In re Shell Oil Co.*, 992 F.2d 1204, 1208, 26 USPQ2d 1687, 1690 (Fed. Cir. 1993). Therefore, any doubt as to the existence of a likelihood of confusion must be resolved in favor of the registrant. *In re Hyper Shoppes (Ohio), Inc.*, 837 F.2d 463, 6 USPQ2d 1025 (Fed. Cir. 1988); *Lone Star Mfg. Co. v. Bill Beasley, Inc.*, 498 F.2d 906, 182 USPQ 368 (C.C.P.A. 1974).

***Similarity of Marks***

Marks may be confusingly similar in appearance where there are similar terms or phrases or similar parts of terms or phrases appearing in both applicant's and registrant's mark. *See e.g., Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce*, 228 USPQ 689 (TTAB 1986), *aff'd* 1 USPQ2d 1813 (Fed. Cir. 1987) (COMMCASH and COMMUNICASH); *In re Phillips-Van Heusen Corp.*, 228 USPQ 949 (TTAB 1986) (21 CLUB and "21" CLUB (stylized)); *In re Corning Glass Works*, 229 USPQ 65 (TTAB 1985) (CONFIRM and CONFIRMCELLS); *In re Collegian Sportswear Inc.*, 224 USPQ 174 (TTAB 1984) (COLLEGIAN OF CALIFORNIA and COLLEGIENNE); *In re Pellerin Milnor Corp.*, 221 USPQ 558 (TTAB 1983) (MILTRON and MILLTRONICS); *In re BASF A.G.*, 189 USPQ 424 (TTAB 1975) (LUTEXAL and LUTEX); TMEP §§1207.01(b)(ii) and (b)(iii).

Disclaimed matter is typically less significant or less dominant when comparing marks. Although a disclaimed portion of a mark certainly cannot be ignored, and the marks must be compared in their entireties, one feature of a mark may be more significant in creating a commercial impression. *In re Dixie Restaurants Inc.*, 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997); *In re National Data Corporation*, 753 F.2d 1056, 224 USPQ 749 (Fed. Cir. 1985); and *In re Appetito Provisions Co. Inc.*, 3 USPQ2d 1553 (TTAB 1987). *See also Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 62 USPQ 2d 1001 (Fed. Cir. 2002); *Tektronix, Inc. v. Daktronics, Inc.*, 534 F.2d 915, 189 USPQ 693 (C.C.P.A. 1976); *In re El Torito Rests. Inc.*, 9 USPQ2d 2002 (TTAB 1988); *In re Equitable Bancorporation*, 229 USPQ 709 (TTAB 1986).

Applicant's mark, APEX COMPANIES and U.S. Registration Nos. 2431006 (APEXMAIL), 2701627 (APEX TRAINING SYSTEM), 2703428 (APEX FITNESS GROUP), 2657874 (APEXAUTO.COM), 2936205 (APEX), 3129631 (APEX MILLS) and 3132658 (APEX REVIEW) are very similar in appearance and commercial impression. All the marks in this action share the common term APEX which appears at the beginning of the marks and is spelled the same throughout. The term COMPANIES in the Applicant's mark is merely an entity designation and will be required to be disclaimed. This term has little, if any, trademark significance. The term APEX is the most dominant portion of the marks in terms of forming a commercial impression. All the marks cited above, when compared with Applicant's mark, emit a highly similar commercial impression and would be likely to confuse the consumer as to the source of the respective goods and/or services.

***Similarity of Goods/ Services***

The goods/services of the parties need not be identical or directly competitive to find a likelihood of confusion. Instead, they need only be related in some manner, or the conditions surrounding their marketing be such that they could be

encountered by the same purchasers under circumstances that could give rise to the mistaken belief that the goods/services come from a common source. *On-line Careline Inc. v. America Online Inc.*, 229 F.3d 1080, 56 USPQ2d 1471 (Fed. Cir. 2000); *In re Martin's Famous Pastry Shoppe, Inc.*, 748 F.2d 1565, 223 USPQ 1289 (Fed. Cir. 1984); *In re Melville Corp.*, 18 USPQ2d 1386, 1388 (TTAB 1991); *In re Corning Glass Works*, 229 USPQ 65 (TTAB 1985); *In re Rexel Inc.*, 223 USPQ 830 (TTAB 1984); *Guardian Prods. Co., Inc. v. Scott Paper Co.*, 200 USPQ 738 (TTAB 1978); *In re Int'l Tel. & Tel. Corp.*, 197 USPQ 910 (TTAB 1978); TMEP §1207.01(a)(i).

Likelihood of confusion is determined on the basis of the goods and/or services identified in the application and registration. If the application describes the goods and/or services broadly and there are no limitations as to their nature, type, channels of trade or classes of purchasers, it is presumed that the application encompasses all goods and/or services of the type described, that they move in all normal channels of trade, and that they are available to all potential customers. *See In re Melville Corp.*, 18 USPQ2d 1386, 1388 (TTAB 1991) ("With reference to the channels of trade, applicant's argument that its goods are sold only in its own retail stores is not persuasive ...There is no restriction [in its identification of goods] as to the channels of trade in which the goods are sold"); TMEP §1207.01(a)(iii).

In the case at bar, Applicant seeks to register the mark APEX COMPANIES for, "Promoting the goods and services of others by placing advertisements and promotional displays in an electronic site accessed through computer networks; providing an on-line advertising guide featuring the goods and services of others; electronic retailing services and ordering services via computer featuring a wide variety of merchandise; Retail store and mail order services, featuring, a wide variety of merchandise; arranging for others the repair, service and replacement of a wide variety of general merchandise and vehicles; retail automobile parts and accessories stores; retail store services featuring customer pick-up and/or payment of newly purchased or repaired merchandise; pick up and delivery services; legal business, advertising, marketing and management consulting services."

Registrant of U.S. Registration Nos. 2701627 (APEX TRAINING SYSTEM), 2703428 (APEX FITNESS GROUP) and 2936205 (APEX), own registrations for the following services, "Distributorship featuring vitamins & fitness programs" and "Distributorships featuring vitamins and fitness programs in the form of licensed software, videotapes, and printed information." Registrant of U.S. Registration No. 3129631 owns the mark APEX MILL for "Distributorships in the field of knits and fabrics." Applicant offers electronic retail and ordering services, retail store and mail order services for a wide variety of merchandise. This recitation is very broad and encompasses the goods that are distributed by the registrants. Retail services and distributorship services are closely related services. Attached are copies of printouts from the USPTO X-Search database, which show third-party registrations of marks used in connection with the same or similar goods and/or services as those of applicant and registrant in this case. These printouts have probative value to the extent that they serve to suggest that the goods and/or services listed therein, namely retail services and distributorship services, are of a kind that may emanate from a single source. *See In re Infinity Broad. Corp.*, 60 USPQ2d 1214, 1217-1218 (TTAB 2001); *In re Albert Trostel & Sons Co.*, 29 USPQ2d 1783, 1785-86 (TTAB 1993); *In re Mucky Duck Mustard Co., Inc.*, 6 USPQ2d 1467, 1470 at n.6 (TTAB 1988). These services will flow in the same streams of commerce to the same class of consumer. In addition, these services are likely to be advertised in the same types of media outlets which will lead to a likelihood of confusion as to the source of the services.

Registrant of U.S. Registration No. 2431006 owns the mark APEXMAIL for "ADVERTISING AND MARKETING SERVICES, NAMELY, PROMOTING THE GOODS AND SERVICES OF OTHERS BY PLACING ADVERTISEMENTS ON A WEB SITE ACCESSED THROUGH A GLOBAL COMPUTER NETWORK." These services are identical to the Applicant's recitation of "promoting the goods and services of others by placing advertisements

and promotional displays in an electronic site accessed through computer networks; providing an on-line advertising guide featuring the goods and services of others." In this instance, both parties are offering advertising and promotional services via global computer networks. These services will also flow in the same stream of commerce to the same class of consumer.

Registrant of U.S. Registration No. 2657874 owns the mark APEXAUTO.COM for "Computerized on-line retail, wholesale, and distributorships featuring automobile parts." These services are identical to Applicant's recitation of "retail automobile parts and accessories stores," and closely related to "arranging for others the repair, service and replacement of a wide variety of general merchandise and vehicles."

Registrant of U.S. Registration No. 3132658 owns the mark APEX REVIEW for "Legal support services namely consulting services in the field of litigation preparedness and discovery management." These services are identical to the Applicant's recitation of "legal, business, advertising, marketing and management consulting services." Applicant's recitation is broad and does not specify the nature of the consulting services and therefore is unlimited in scope and includes the services listed in Registrant's recitation of services.

Accordingly, due to the similarity in the marks cited above and relatedness of the services, confusion as to source is likely. The registration is refused under Trademark Act 2(d) based on a likelihood of confusion.

Applicant may respond to the stated refusal by doing one of the following:

(1) amending or deleting the goods and/or services to which the refusal pertains;

(2) arguing against the refusal of the application as a whole;

(3) filing a request to divide out the goods and/or services that have not been refused registration, so that the mark may be published for opposition for those goods or services to which the refusal does not pertain (See 37 C.F.R. §2.87 and TMEP §§1110.05 and 1403.03 regarding the requirements for filing a request to divide); or

(4) changing the basis for the goods and/or services identified in the refusal, if appropriate (the basis may not be changed for applications filed under Trademark Act §66(a)).

If applicant chooses to respond to the refusal(s) to register, then applicant must also respond to the following requirement(s).

**Identification of Goods and/or Services**

The identification of services is indefinite and must be clarified. Applicant must clarify the nature of the "electronic cites." Applicant must also clarify the nature of the activity involved in the electronic retailing services, i.e. store, distributorship, ect. In addition, "general merchandise" is overbroad and must be clarified to state the field or type of goods that are subject to the services. If Applicant is supplying general merchandise to consumers, Applicant may amend the identification of goods to specify the nature of the merchandise (see suggestions below.) Please note that "Automobile repair and maintenance" and "Legal consultation services" are not classified in class 35. TMEP §1402.01. Applicant may adopt the

following identification, if accurate:

Promoting the goods and services of others by placing advertisements and promotional displays in an electronic [***Applicant clarify the nature of the sites, i.e., websites, electronic magazine sites, ect.***] site accessed through computer networks; providing a [***SEARCHABLE***] on-line advertising guide featuring the goods and services of others; electronic retailing [***Insert the nature of the activity, i.e. store, distributorships, outlets, ect.***] services and [***ONLINE***] ordering services via computer featuring a ***wide variety of consumer goods of others***; Retail store and mail order services, featuring ***a wide variety of consumer goods of others***; arranging for others the repair, service and replacement of a wide variety of general merchandise and vehicles; retail automobile parts and accessories stores; retail store services featuring customer pick-up and/or payment of newly purchased or repaired merchandise; pick up and delivery services [***Applicant must state the nature of the pick up and delivery services***]; business, advertising, marketing and management consulting services, in International Class 35;

Automobile repair and maintenance, in International Class 37.

Legal consultation services, International Class 42.

The applicant is advised that the Trademark Office Manual of Acceptable Identifications of Goods and Services, which includes the correct classifications of the listed goods and services, may be found online at http://tess2.uspto.gov/netahtml/tidm.html. The applicant may find this resource to be quite useful in framing an amended and acceptable identification of goods/services in this matter.

The applicant should bear in mind that brackets and parentheses shown in the identification manual are in the nature of directional signals, the significance of which is explained in the introduction to the Identification Manual. Parentheses and brackets ***should not*** be included in the actual identification of goods or recitation of services adopted by the applicant.

Please also note that, while an application may be amended to clarify or limit the identification, additions to the identification are not permitted. 37 C.F.R. §2.71(a); TMEP Sections 1402.06 and 1402.07(e). Therefore, the applicant may not amend to include any goods or services that are not within the scope of the goods and services recited in the present identification. In addition, once an item has been deleted from an identification of goods or recitation of services, it normally cannot be reinserted.

**Combined Applications**

Applicant must clarify the number of classes for which registration is sought. The submitted filing fees are insufficient to cover all the classes in the application. Specifically, the application identifies goods and/or services that are classified in at least 3 international classes, however applicant paid the fee for only 1 class.

If applicant prosecutes this application as a combined, or multiple-class application, then applicant must comply with each of the requirements below for those goods and/or services based on actual use in commerce under Trademark Act Section 1(a):
(1) Applicant must list the goods/services by international class with the classes listed in ascending numerical order;
(2) Applicant must submit a filing fee for each international class of goods and/or services not covered by the fee already paid (current fee information should be confirmed at http://www.uspto.gov); and
(3) For each additional class of goods and/or services, applicant must submit:

(a) dates of first use of the mark anywhere and dates of first use of the mark in commerce, or a statement that the dates of use in the initial application apply to that class; the dates of use, both anywhere and in commerce, must be at least as early as the filing date of the application;
(b) ***one specimen showing use of the mark for each class*** of goods and/or services; the specimen must have been in use in commerce at least as early as the filing date of the application;

(c) a statement that "the specimen was in use in commerce on or in connection with the goods and/or services listed in the application at least as early as the filing date of the application;" and

(d) verification of the statements in 3(a) and 3(c) in an affidavit or a signed declaration under 37 C.F.R. §2.20. (NOTE: Verification is *not* required where (1) the dates of use for the added class are stated to be the same as the dates of use specified in the initial application, or (2) the original specimens are acceptable for the added class.) 37 C.F.R. §§2.6, 2.34(a), 2.59, 2.71(c), and 2.86(a); TMEP §§810, 904.09, 1403.01 and 1403.02(c).

Please note the following requirement is only if Applicant chooses to add additional classes to the application:

**Specimen for International Classes 37 and 42**

The application is incomplete because it does not include the required specimen showing use of the applied-for mark in commerce for the goods and/or services identified in the application. An application based on Section 1(a) of the Trademark Act must include a specimen showing the applied-for mark in use in commerce for ***each class of goods and/or services***. Trademark Act Sections 1(a) and 45, 15 U.S.C. §§1051(a) and 1127; 37 C.F.R. §§2.34(a)(1)(iv) and 2.56; TMEP §904.

Therefore, applicant must submit the following:

(1) A specimen (i.e., an example of how applicant actually uses its mark in commerce) for each class of goods and/or services based on use in commerce.

(2) The following statement, verified with an affidavit or signed declaration under 37 C.F.R. §2.20: **"The specimen was in use in commerce at least as early as the filing date of the application."** 37 C.F.R. §2.56(a); TMEP §904.09. If submitting a specimen requires an amendment to the dates of use, applicant must also verify the amended dates. 37 C.F.R. §2.71(c).

Examples of specimens for goods are tags, labels, instruction manuals, containers, photographs that show the mark on the goods or packaging, or displays associated with the goods at their point of sale. TMEP §§904.04 *et seq.* Examples of specimens for services are signs, photographs, brochures, website printouts or advertisements that show the mark used in the sale or advertising of the services. TMEP §§1301.04 *et seq.*

If applicant cannot satisfy the above requirements, applicant may amend the Section 1(a) filing basis (use in commerce) to Section 1(b) (intent to use basis), for which no specimen is required. However, should applicant amend the basis to Section 1(b), registration cannot be granted until applicant later amends the application back to use in commerce by filing an acceptable allegation of use with a proper specimen. 15 U.S.C. §1051(c); 37 C.F.R. §§2.76, 2.88; TMEP Chapter 1100. In the alternative, applicant may cancel the Section 1(a) basis and rely solely on the already asserted Section 44(e) basis, for which a specimen would not be required. 15 U.S.C. §1126(e); 37 C.F.R. §2.34(a)(3).

In order to amend the Section 1(a) basis to either Section 1(b) or Section 44(e) of the Trademark Act, applicant need only provide a written request to do so. TMEP §§806.02(g) and 806.03(g).

Pending a proper response, registration is refused for those goods and/or services based on Section 1(a), because applicant has not provided evidence of use in commerce of the applied-for mark. 15 U.S.C. §§1051(a) and 1127; 37 C.F.R. §§2.34(a)(1)(iv) and 2.56.

The specimen for class 35 is acceptable.

**Disclaimer**

Applicant must disclaim the descriptive wording "COMPANIES" apart from the mark as shown because it merely describes the entity through which the services are rendered. Trademark Act Section 6, 15 U.S.C. §1056; TMEP §§1213 and 1213.03(a). Specifically, the term COMPANY means "business enterprise." The word is merely descriptive of the entity type because it describes the various business enterprises through which the Applicant conducts its functions recited in the application.

The Office can require an applicant to disclaim exclusive rights to an unregistrable part of a mark, rather than refuse registration of the entire mark. Trademark Act Section 6(a), 15 U.S.C. §1056(a). Under Trademark Act Section 2(e), 15 U.S.C. §1052(e), the Office can refuse registration of the entire mark where it is determined that the entire mark is merely descriptive, deceptively misdescriptive, or primarily geographically descriptive of the goods. Thus, the Office may require the disclaimer of a portion of a mark which, when used in connection with the goods or services, is merely descriptive, deceptively misdescriptive, primarily geographically descriptive, or otherwise unregistrable (e.g., generic). TMEP §1213.03(a). If an applicant does not comply with a disclaimer requirement, the Office may refuse registration of the entire mark. TMEP §1213.01(b).

A "disclaimer" is thus a written statement that an applicant adds to the application record that states that applicant does not have exclusive rights, separate and apart from the entire mark, to particular wording and/or to a design aspect. The appearance of the applied-for mark does not change.

Accordingly, the disclaimer statement, when printed in the *Trademark Official Gazette*, will read as follows:

> No claim is made to the exclusive right to use "COMPANIES" apart from the mark as shown.

A disclaimer does *not* physically remove the disclaimed matter from the mark, but rather is a written statement that applicant does not claim exclusive rights to the disclaimed wording and/or design separate and apart from the mark as shown in the drawing.

**Prior Pending Application**

Information regarding pending Application Serial No. 78901764 is enclosed. The filing date of the referenced application precedes applicant's filing date. There may be a likelihood of confusion under Trademark Act Section 2(d) between applicant's mark and the referenced mark. If the referenced application registers, registration may be refused in this case

under Section 2(d). 37 C.F.R. §2.83; TMEP §§1208 *et seq*. Therefore, upon entry of a response to this Office action, action on this case may be suspended pending final disposition of the earlier-filed application.

**Claim of Ownership of Prior Registrations**

If applicant is the owner of U.S. Registration No. 1847961, 2918976 and others, then applicant must amend the claim of ownership statement. 37 C.F.R. §2.36; TMEP §812. The following standard format is suggested:

Applicant is the owner of U.S. Registration No. 1847961, 2918976 and others.

**Conclusion**

If applicant has questions about its application or needs assistance in responding to this Office Action, please telephone the assigned trademark examining attorney directly at the number below.

/Michael G. Lewis/

Examining Attorney

Law Office 111

United States Patent and Trademark Office

(571) 272-5495

**HOW TO RESPOND TO THIS OFFICE ACTION:**

- ONLINE RESPONSE: You may respond using the Office's Trademark Electronic Application System (TEAS) Response to Office action form available on our website at http://www.uspto.gov/teas/index.html. If the Office action issued via e-mail, you must wait 72 hours after receipt of the Office action to respond via TEAS. **NOTE: Do not respond by e-mail. THE USPTO WILL NOT ACCEPT AN E-MAILED RESPONSE.**
- REGULAR MAIL RESPONSE: To respond by regular mail, your response should be sent to the mailing return address above, and include the serial number, law office number, and examining attorney's name. **NOTE: The filing date of the response will be the *date of receipt in the Office*,** not the postmarked date. To ensure your response is timely, use a certificate of mailing. 37 C.F.R. §2.197.

**STATUS OF APPLICATION:** To check the status of your application, visit the Office's Trademark Applications and Registrations Retrieval (TARR) system at http://tarr.uspto.gov.

**VIEW APPLICATION DOCUMENTS ONLINE:** Documents in the electronic file for pending applications can be viewed and downloaded online at http://portal.uspto.gov/external/portal/tow.

**GENERAL TRADEMARK INFORMATION:** For general information about trademarks, please visit the Office's website at http://www.uspto.gov/main/trademarks.htm

**FOR INQUIRIES OR QUESTIONS ABOUT THIS OFFICE ACTION, PLEASE CONTACT THE ASSIGNED EXAMINING ATTORNEY SPECIFIED ABOVE.**

**Print: Dec 14, 2006** **75783092**

## DESIGN MARK

**Serial Number**
75783092

**Status**
REGISTERED

**Word Mark**
APEXMAIL

**Standard Character Mark**
No

**Registration Number**
2431006

**Date Registered**
2001/02/27

**Type of Mark**
SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(1) TYPED DRAWING

**Owner**
APEXMAIL.NET INC. CORPORATION BRITISH COLUMBIA 300- 34252 MARSHALL ROAD Abbotsford, British Columbia CANADA V2S 1L9

**Goods/Services**
Class Status -- ACTIVE. IC 035. US 100 101 102. G & S: ADVERTISING AND MARKETING SERVICES, NAMELY, PROMOTING THE GOODS AND SERVICES OF OTHERS BY PLACING ADVERTISEMENTS ON A WEB SITE ACCESSED THROUGH A GLOBAL COMPUTER NETWORK. First Use: 1998/05/02. First Use In Commerce: 1998/05/02.

**Goods/Services**
Class Status -- ACTIVE. IC 038. US 100 101 104. G & S: ELECTRONIC MAIL SERVICES. First Use: 1998/05/02. First Use In Commerce: 1998/05/02.

**Filing Date**
1999/08/24

**Examining Attorney**
HUTTON, DOUG

**Print: Dec 14, 2006** **75783092**

**Attorney of Record**
KATHY A . KELLER, ESQ.

# APEXMAIL

Print: Dec 14, 2006 75849815

**DESIGN MARK**

**Serial Number**
75849815

**Status**
REGISTERED

**Word Mark**
APEX TRAINING SYSTEM

**Standard Character Mark**
No

**Registration Number**
2701627

**Date Registered**
2003/04/01

**Type of Mark**
SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(3) DESIGN PLUS WORDS, LETTERS AND/OR NUMBERS

**Owner**
24 HOUR FITNESS USA, INC. CORPORATION CALIFORNIA 12647 ALCOSTA BLVD, SUITE 500 SAN RAMON CALIFORNIA 94583

**Goods/Services**
Class Status -- ACTIVE. IC 035. US 100 101 102. G & S: Distributorships featuring vitamins and fitness programs in the form of licensed software, videotapes, and printed information. First Use: 1999/06/01. First Use In Commerce: 1999/06/01.

**Prior Registration(s)**
1932876

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "TRAINING SYSTEM" APART FROM THE MARK AS SHOWN.

**Filing Date**
1999/11/16

**Examining Attorney**
MOLINOFF, JEFFREY

Print: Dec 14, 2006 75849815

**Attorney of Record**
William E. Levin

APEX

TRAINING SYSTEM

**DESIGN MARK**

**Serial Number**
75849816

**Status**
REGISTERED

**Word Mark**
APEX FITNESS GROUP

**Standard Character Mark**
No

**Registration Number**
2703428

**Date Registered**
2003/04/08

**Type of Mark**
SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(3) DESIGN PLUS WORDS, LETTERS AND/OR NUMBERS

**Owner**
24 HOUR FITNESS USA, INC. CORPORATION CALIFORNIA 12647 ALCOSTA BLVD, SUITE 500 SAN RAMON CALIFORNIA 94583

**Goods/Services**
Class Status -- ACTIVE. IC 035. US 100 101 102. G & S: Distributorships featuring vitamins and fitness programs in the form of licensed software, videotapes, and printed information. First Use: 1999/06/01. First Use In Commerce: 1999/06/01.

**Prior Registration(s)**
1932876

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "FITNESS GROUP" APART FROM THE MARK AS SHOWN.

**Filing Date**
1999/11/16

**Examining Attorney**
MOLINOFF, JEFFREY

Print: Dec 14, 2006 75849816

**Attorney of Record**
Susan E Hollander Esq

APEX

FITNESS GROUP

## DESIGN MARK

**Serial Number**
76093775

**Status**
REGISTERED

**Word Mark**
APEXAUTO.COM

**Standard Character Mark**
No

**Registration Number**
2657874

**Date Registered**
2002/12/10

**Type of Mark**
SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(1) TYPED DRAWING

**Owner**
Apex Automobile Parts, Inc. CORPORATION CALIFORNIA 2601 Loma Avenue South El Monte CALIFORNIA 91733

**Goods/Services**
Class Status -- ACTIVE. IC 035. US 100 101 102. G & S: Computerized on-line retail, wholesale, and distributorships featuring automobile parts. First Use: 1998/04/02. First Use In Commerce: 1998/04/02.

**Prior Registration(s)**
2373486

**Filing Date**
2000/07/24

**Examining Attorney**
COREA, ANDY

**Attorney of Record**
Domino Wang

APEXAUTO.COM

**Print: Dec 14, 2006** **78346264**

**DESIGN MARK**

**Serial Number**
78346264

**Status**
REGISTERED

**Word Mark**
APEX

**Standard Character Mark**
No

**Registration Number**
2936205

**Date Registered**
2005/03/29

**Type of Mark**
TRADEMARK; SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(3) DESIGN PLUS WORDS, LETTERS AND/OR NUMBERS

**Owner**
24 HOUR FITNESS USA, INC. CORPORATION CALIFORNIA 12647 ALCOSTA BLVD, SUITE 500 SAN RAMON CALIFORNIA 94583

**Goods/Services**
Class Status -- ACTIVE. IC 044. US 100 101. G & S: Providing information in the field of nutrition and fitness. First Use: 2003/07/01. First Use In Commerce: 2003/07/01.

**Goods/Services**
Class Status -- ACTIVE. IC 005. US 006 018 044 046 051 052. G & S: nutritional and food supplements; vitamins and minerals; vitamin and mineral supplements. First Use: 2003/07/01. First Use In Commerce: 2003/07/01.

**Goods/Services**
Class Status -- ACTIVE. IC 009. US 021 023 026 036 038. G & S: audio and visual recordings, namely, pre-recorded cassettes, videos, DVDs, and CD-ROMs in the field of health, fitness, or nutrition. First Use: 2003/07/01. First Use In Commerce: 2003/07/01.

**Goods/Services**

Class Status -- ACTIVE. IC 016. US 002 005 022 023 029 037 038 050. G & S: Printed matter, namely books, instruction manuals, periodicals, brochures, and magazines in the field of health, fitness, or nutrition. First Use: 2003/07/01. First Use In Commerce: 2003/07/01.

**Goods/Services**
Class Status -- ACTIVE. IC 035. US 100 101 102. G & S: Distributorship featuring vitamins & fitness programs. First Use: 2003/07/01. First Use In Commerce: 2003/07/01.

**Goods/Services**
Class Status -- ACTIVE. IC 041. US 100 101 107. G & S: Instruction and training services in the field of fitness and nutrition. First Use: 2003/07/01. First Use In Commerce: 2003/07/01.

**Filing Date**
2003/12/29

**Examining Attorney**
OSBORNE, STANLEY I.

apex

## DESIGN MARK

**Serial Number**
78704616

**Status**
REGISTERED

**Word Mark**
APEX REVIEW

**Standard Character Mark**
Yes

**Registration Number**
3132658

**Date Registered**
2006/08/22

**Type of Mark**
SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
DiscoverReady LLC LTD LIAB CO DELAWARE 34th Floor One Chase Manhattan Plaza New York NEW YORK 10005

**Goods/Services**
Class Status -- ACTIVE. IC 042. US 100 101. G & S: Legal support services namely consulting services in the field of litigation preparedness and discovery management. First Use: 2005/05/01. First Use In Commerce: 2005/05/01.

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE 'REVIEW' APART FROM THE MARK AS SHOWN.

**Filing Date**
2005/08/31

**Examining Attorney**
BUSH, KAREN K.

**Attorney of Record**
James S. Blank

# APEX REVIEW

Print: Dec 14, 2006 78706549

**DESIGN MARK**

**Serial Number**
78706549

**Status**
REGISTERED

**Word Mark**
APEX MILLS

**Standard Character Mark**
No

**Registration Number**
3129631

**Date Registered**
2006/08/15

**Type of Mark**
SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(3) DESIGN PLUS WORDS, LETTERS AND/OR NUMBERS

**Owner**
Apex Mills Corp. CORPORATION NEW YORK 168 Doughty Blvd. Inwood NEW YORK 11096

**Goods/Services**
Class Status -- ACTIVE. IC 035. US 100 101 102. G & S: Distributorships in the field of knits and fabrics. First Use: 2004/03/00. First Use In Commerce: 2004/03/00.

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MILLS" APART FROM THE MARK AS SHOWN.

**Description of Mark**
The mark consists in part of a stylized piece of fabric represented by dots.

**Filing Date**
2005/09/02

**Examining Attorney**
GOODSAID, IRA J.

**Attorney of Record**
John Alumit

APEX
MILLS

**DESIGN MARK**

**Serial Number**
78901764

**Status**
PUBLICATION/ISSUE REVIEW COMPLETE

**Word Mark**
THE APEX ENTERPRISE

**Standard Character Mark**
Yes

**Type of Mark**
SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
BAE Systems Land & Armaments L.P. LIMITED PARTNERSHIP DELAWARE Law Dept. M115 4800 E. River Road Minneapolis MINNESOTA 554211498

**Goods/Services**
Class Status -- ACTIVE. IC 035. US 100 101 102. G & S: Business advisory services, consultancy and information.

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "ENTERPRISE" APART FROM THE MARK AS SHOWN.

**Filing Date**
2006/06/06

**Examining Attorney**
POWERS, JESSICA A.

**Attorney of Record**
Kyle T. Peterson

# THE APEX ENTERPRISE

**DESIGN MARK**

**Serial Number**
78542747

**Status**
REGISTERED

**Word Mark**
STONE SOURCE

**Standard Character Mark**
Yes

**Registration Number**
3111414

**Date Registered**
2006/07/04

**Type of Mark**
SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
STONE SOURCE, LLC LTD LIAB CO DELAWARE 2711 CENTREVILLE ROAD SUITE 400 WILMINGTON DELAWARE 19808

**Goods/Services**
Class Status -- ACTIVE. IC 035. US 100 101 102. G & S: RETAIL STORE SERVICES FOR HOME IMPROVEMENT PRODUCTS, NAMELY, CERAMIC TILES, GLASS TILES, METAL TILES, ENGINEERED STONE, AND OTHER DECORATIVE SURFACES; WHOLESALE DISTRIBUTORSHIPS FEATURING HOME IMPROVEMENT PRODUCTS, NAMELY, CERAMIC TILES, GLASS TILES, METAL TILES, ENGINEERED STONE, AND OTHER DECORATIVE SURFACES. First Use: 1988/06/01. First Use In Commerce: 1988/06/01.

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "STONE" APART FROM THE MARK AS SHOWN.

**Section 2f Statement**
2(F) ENTIRE MARK

**Filing Date**
2005/01/05

**Examining Attorney**
AMOS, TANYA

**Attorney of Record**
Chester Rothstein

# STONE SOURCE

**DESIGN MARK**

**Serial Number**
78546257

**Status**
REGISTERED

**Word Mark**
DIRECT USA DELICIOUS FOODS

**Standard Character Mark**
No

**Registration Number**
3179325

**Date Registered**
2006/12/05

**Type of Mark**
SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(3) DESIGN PLUS WORDS, LETTERS AND/OR NUMBERS

**Owner**
Direct USA, Inc. CORPORATION FLORIDA 12061 31st Court N., Suite A St. Petersburg FLORIDA 33716

**Goods/Services**
Class Status -- ACTIVE. IC 035. US 100 101 102. G & S: On-line retail store services, mail order catalog services and wholesale distributorships featuring food products, namely meats consisting of processed beef, poultry, seafood and pork. First Use: 1999/02/18. First Use In Commerce: 1999/02/18.

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "FOODS" APART FROM THE MARK AS SHOWN.

**Section 2f Statement**
as to "DIRECT USA" and "DELICIOUS FOODS"

**Filing Date**
2005/01/12

**Examining Attorney**

**Print: Dec 14, 2006** **78546257**

PEREZ, STEVEN

**Attorney of Record**
Frank R. Jakes

DIRECT USA

Delicious Foods

**DESIGN MARK**

**Serial Number**
78591547

**Status**
REGISTERED

**Word Mark**
A PREHISTORIC FAMILY ADVENTURE

**Standard Character Mark**
Yes

**Registration Number**
3181810

**Date Registered**
2006/12/05

**Type of Mark**
SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
T-REX CAFE, INC. CORPORATION DELAWARE 1510 WEST LOOP SOUTH HOUSTON TEXAS 77027

**Goods/Services**
Class Status -- ACTIVE. IC 035. US 100 101 102. G & S: Retail store services and wholesale distributorships featuring clothing, namely, pants, shirts, hats, sweatshirts, shorts, swimwear, t-shirts, jackets of all types, sports caps, boxer shorts, gloves, sweat pants, tank tops, jerseys, pajamas, sweaters, belts, nightshirts, head bands, wrist bands, shoes and sandals, jewelry, key chains, minerals, stones, figurines, plush animals, puppets, science tools, namely microscopes and metal detectors, toys, namely character toys and branded toys, drinkware, books, music and videotapes, home accessories, body care items, food products, clocks, watches, games, and electronic gadgets. First Use: 2006/07/25. First Use In Commerce: 2006/07/25.

**Goods/Services**
Class Status -- ACTIVE. IC 043. US 100 101. G & S: Restaurant services for consumption on the premises. First Use: 2006/07/25. First Use In Commerce: 2006/07/25.

**Filing Date**
2005/03/21

**Examining Attorney**
DUBOIS, MICHELLE

# A PREHISTORIC FAMILY ADVENTURE

amazon.com Find Gifts Shop now at Amazon.com Privacy Information

How much money is in your home? Find out for FREE HOUSEVALUES Enter your zip Submit

Ads by Google
Soulmate Calculator
Calculate The Name Of Your Soulmate Predicted Down To Their Very Name!
www.TheSoulmateCalc
ulator.com
Advertise on this site



Find Your Old School Here:
– City –
– State –
Search

Your High School

Jefferson High School

The American Heritage® Dictionary of the English Language: Fourth Edition. 2000.

# company

SYLLABICATION: com·pa·ny

PRONUNCIATION: kŭm'pə-nē

NOUN: Inflected forms: pl. com·pa·nies

1. A group of persons. See synonyms at band[2]. 2a. One's companions or associates: *moved in fast company; is known by the company she keeps.* b. A guest or guests: *had company for the weekend.* c. The state of friendly companionship; fellowship: *was grateful for her company; friends who finally parted company.* 3a. A business enterprise; a firm. b. A partner or

partners not specifically named in a firm's title: *Lee Rogers and Company.* **4.** A troupe of dramatic or musical performers: *a repertory company.* **5a.** A subdivision of a military regiment or battalion that constitutes the lowest administrative unit. It is usually under the command of a captain and is made up of at least two platoons. **b.** A unit of firefighters. **6.** A ship's crew and officers. See Usage Note at **collective noun**.

TRANSITIVE VERB: Inflected forms: **com·pa·nied, com·pa·ny·ing, com·pa·nies**
To accompany or associate with.

ETYMOLOGY: Middle English *compainie*, from Old French *compaignie*, from Vulgar Latin **compānia*, from **compāniō*, companion. See companion[1].

Ridgemont High School

John Hughes High

classmates.com

The American Heritage® Dictionary of the English Language, Fourth Edition. Copyright © 2000 by Houghton Mifflin Company. Published by the Houghton Mifflin Company. All rights reserved.

CONTENTS · INDEX · ILLUSTRATIONS · BIBLIOGRAPHIC RECORD

‹ companionway company-grade officer ›

Google [Search]

Click here to shop the Bartleby Bookstore.

Welcome · Press · Advertising · Linking · Terms of Use · © 2005 Bartleby.com

amazon.com Find Gifts
Shop now at Amazon.com
Privacy Information

Brands,