# EXHIBIT 3

SHEPPARD MULLIN RICHTER & HAMPTON, LLP
NEIL A. SMITH (SBN 63777)
NATHANIEL BRUNO (SBN 228118)
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
Email: nsmith@sheppardmullin.com
Email: nbruno@sheppardmullin.com

Attorneys for Defendants
Apex Stores, LLC; Apex, LLC; Apex At Home, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| 24 Hour Fitness USA, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Apex Stores, LLC; Apex, LLC; Apex at Home, LLC,<br><br>Defendants. | Case No. 4:08-cv-01681-SBA<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS BASED ON THE LACK OF PERSONAL AND SUBJECT MATTER JURISDICTION, AND MEMORANDUM OF POINTS AND AUTHORITIES THEREON**<br><br>[Fed. R. Civ. P. 12(b)(1) and 12(b)(2)]<br><br>HEARING: SEPTEMBER 9, 2008, 1:00 PM<br><br>COURTROOM: 3 |

TABLE OF CONTENTS

Notice of Motion and Motion ........ 1

Concise Statement of Relief Sought ........ 1

Memorandum of Points and Authorities ........ 1

I. Summary of Argument ........ 1

II. Factual Background and Procedural History ........ 2

A. The Parties ........ 2

B. Petition for Cancellation of 24 Hour Fitness' Marks ........ 4

C. Settlement Negotiations and Procedural History ........ 4

III. ARGUMENT ........ 6

A. The First Amended Complaint Against Apex Stores and Apex, LLC Should Be Dismissed For Lack of Personal Jurisdiction Over Those Defendants ........ 6

1. The Applicable Standard ........ 7

2. This Court Lacks General Jurisdiction Over Apex Stores and Apex, LLC ........ 7

3. This Court Lacks Specific Jurisdiction Over Apex Stores and Apex, LLC ........ 9

4. It would be Unreasonable for this Court to Exercise Personal Jurisdiction over Apex Stores and Apex, LLC. ........ 11

5. Apex At Home's California contacts cannot be imputed to Apex Stores and Apex, LLC ........ 14

B. This Court Should Dismiss 24 Hour Fitness' Complaint For Lack of Subject Matter Jurisdiction. ........ 16

1. 24 Hour Fitness cannot establish that an actual controversy existed when it filed its Complaint ........ 18

2. This Court lacks subject matter over Apex Stores it has no legal interest in the outcome of this action ........ 20

3. Even if this Court determines an actual case or controversy existed, this court should exercise its discretion and dismiss the First Amended Complaint because 24 Hour Fitness filed this anticipatory suit in bad faith as a forum shopping tactic ........ 21

# TABLE OF AUTHORITIES

PAGE

**CASES:**


A-Z Intern. v. Phillips, 323 F.3d 1141 (9th Cir. (Cal.), 2003) ..... 17

ADO Finance, AG v. McDonnell Douglas Corp., 931 F.Supp. 711 (C.D. Cal., 1996) ..... 14

Allard v. DeLorean, 884 F.2d 464 (9th Cir. (Cal.), 1989) ..... 21

Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622 (9th Cir. (Cal.), 1991) ..... 23

American States Ins. Co. v. Kearns, 15 F.3d 142 (9th Cir. (Cal.), 1994) ..... 16

Autodesk, Inc. v. RK Mace Engineering, Inc., 2004 WL 603382 (N.D. Cal. March 11, 2004) ..... 10

Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082 (9th Cir. (Cal.), 2000) ..... 8

Bright v. Primary Source Media, 1998 WL 671247 (N.D. Cal., Sep. 19, 1998) ..... 15,16

Brillhart v. Excess Ins. Co., 316 U.S. 491 (1942) ..... 22

Bridgelux, Inc. v. Cree, Inc., 2007 WL 2022024 (N.D.Cal. July 9, 2007) ..... 17

Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985) ..... 11, 12

Caruth v. International Psychoanalytical Ass'n, 59 F.3d 126 (9th Cir. (Cal.), 1995) ..... 12

CE Distribution, LLC v. New Sensor Corp., 380 F.3d 1107 (9th Cir. (Ariz.), 2004) ..... 14

Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573 (Fed. Cir. (Cal.), 1993) ..... 17

Chamberlain v. Allstate Ins. Co., 931 F.2d 1361 (9th Cir. (Cal.), 1991) ..... 22

Congoleum Corp. v. DLW Aktiengesellschaft, 729 F.2d 1240 (9th Cir. (Cal.), 1984) ..... 7

Continental Cas. Co. v. Robsac Industries,
947 F.2d 1367 (9th Cir. (Cal.), 1991) ........ 22

Crossbow Technology, Inc. v. YH Technology,
531 F.Supp.2d 1117 (N.D.Cal., 2007) ........ 17

Cubbage v. Merchant,
744 F.2d 665 (9th Cir. (Cal.), 1984) ........ 7, 14

Data Disc, Inc. v. Systems Technology Associates, Inc.,
557 F.2d 1280 (9th Cir. (Cal.), 1977) ........ 7

Dex Products, Inc. v. Houghteling,
2006 WL 1751903 (N.D.Cal., Jun. 23, 2006) ........ 11

Doe v. Geller,
533 F.Supp.2d 996 (N.D. Cal., 2008) ........ 13

Doe v. Unocal Corp.,
248 F.3d 915 (9th Cir. (Cal.), 2001) ........ 15

DeFeo v. Procter & Gamble Co.,
831 F.Supp. 776 (N.D. Cal., 1993) ........ 23

Dole Food Co. v. Watts,
303 F.3d 1104 (9th Cir. (Cal.), 2002) ........ 10

E. & J. Gallo Winery v. Pernod Ricard USA, LLC,
2006 WL 2849830 (E.D. Cal., Oct. 5, 2006) ........ 20

EMC Corp. v. Norand Corp.,
89 F.3d 807 (Fed. Cir. (Mass.), 1996) ........ 23

FDIC v. British-American Ins. Co., Ltd.,
828 F.2d 1439 (9th Cir. (Cal.), 1987) ........ 12

Freecyclesunnyvale v. Freecycle Network, Inc.,
2006 WL 870688 (N.D. Cal., Apr. 4, 2006) ........ 22, 23

GAF Bldg. Materials Corp. v. Elk Corp. of Dallas,
90 F.3d 479 (Fed. Cir. (Tex.), 1996) ........ 17

Gladwell Governmental Services, Inc. v. County of Marin,
2005 WL 2656964 (N.D. Cal., Oct. 17, 2005) ........ 21

Goldberg v. Cameron,
482 F.Supp.2d 1136 (N.D. Cal., 2007) ........ 8

Government Employees Ins. Co. v. Dizol,
133 F.3d 1220 (9th Cir. (Hawai'i.), 1998) ........ 22

Gribin v. Hammer Galleries,
793 F.Supp. 233 (C.D. Cal., 1992) ........ 23

Haisten v. Grass Valley Medical Fund, Ltd., 784 F.2d 1392 (9th Cir. (Cal.), 1986) ... 12

Harris-Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd., 328 F.3d 1122 (9th Cir. (Cal.), 2003) ... 14

Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984) ... 8

Hideki Electronics, Inc. v. LaCrosse Technology, Ltd., 2006 WL 1643534 (D. Or., Jun. 5, 2006) ... 17

Hilsenrath v. Equity Trust (Jersey) Ltd., 2008 WL 728902 (N.D. Cal., Mar. 17, 2008) ... 9, 10, 11

Hockey v. Medhekar, 30 F.Supp.2d 1209 (N.D. Cal., 1998) ... 15

Hokama v. E.F. Hutton & Company, Inc., 566 F.Supp. 636 (C.D. Cal., 1983) ... 15

Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879 (Fed. Cir. (N.Y.), 1985) ... 17

Insurance Co. of N. Am. v. Marina Salina Cruz, 649 F.2d 1266 (9th Cir. (Alaska), 1981) ... 9

Itel FL., Inc. v. Container Land Associates, 1997 WL 229951 (N.D. Cal., Apr. 22, 1997) ... 14

Int'l Med. Prosthetics Research Assocs., Inc. v. Gore Enter. Holdings, Inc., 787 F.2d 572 (Fed. Cir. (Ariz.), 1986) ... 17

International Shoe Co. v. Washington, 326 U.S. 310 (1945) ... 7

Jacobsen v. Katzer, 2006 WL 3000473 (N.D. Cal., Oct. 20, 2006) ... 11

Lake v. Lake, 817 F.2d 1416 (9th Cir. (Idaho), 1987) ... 9

M.D. Beauty, Inc. v. Dennis F. Gross, M.D., P.C., 2003 WL 24056263 (N.D. Cal., Oct. 27, 2003) ... 20

MedImmune, Inc. v. Genentech, Inc., 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) ... 17, 23

Monolithic Power Systems, Inc. v. O2 Micro Intern. Ltd., 2007 WL 2318924 (N.D.Cal., Aug. 13, 2007) ... 18

Neilmed Products, Inc. v. Med-Systems, Inc., 472 F.Supp.2d 1178 (N.D. Cal., 2007) ... 16

Oncology Therapeutics Network Connection v. Virginia Hematology Oncology PLLC, 2006 WL 334532 (N.D.Cal., Feb. 10, 2006) .......... 14, 15

Panavision Intern., L.P. v. Toeppen, 141 F.3d 1316 (9th Cir. (Cal.), 1998) .......... 10

Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha, 57 F.3d 1051 (Fed. Cir. (Wis.), 1995).......... 19

Principal Life Ins. Co. v. Robinson, 394 F.3d 665 (9th Cir. (Or.), 2004)) .......... 16

RAE Systems, Inc. v. TSA Systems, Ltd., 2005 WL 1513124 (N.D. Cal. Jun. 24, 2005) .......... 15

Rascon v. Checkcare Enterprises, 2006 WL 2192114 (N.D. Cal., Aug. 1, 2006) .......... 9

Rhoades v. Avon Products, Inc., 504 F.3d 1151 (9th Cir. (Cal.), 2007) .......... 19

Roberts v. Corrothers, 812 F.2d 1173 (9th Cir. (Cal.), 1987) .......... 18

Roth v. Garcia Marquez, 942 F.2d 617 (9th Cir. (Cal.), 1991) .......... 12

Rush v. Savchuk, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980) .......... 7, 14

SanDisk Corp. v. Audio MPEG, Inc., 2007 WL 30598 (N.D. Cal., Jan. 3, 2007) .......... 17

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797 (9th Cir. (Cal.), 2004) .......... 7,8, 9, 10

Shoom, Inc. v. Electronic Imaging Systems of America, Inc., 2006 WL 1529983 (N.D. Cal., Jun. 1, 2006) .......... 19

Solenoid Devices, Inc. v. Ledex, Inc., 375 F.2d 444 (9th Cir. (Cal.), 1967) .......... 19

Tercica, Inc. v. Insmed Inc., 2006 WL 1626930 (N.D. Cal., Jun. 9, 2006) .......... 8, 12

Teva Pharms. USA, Inc. v. Novartis Pharms. Corp., 482 F.3d 1330 (Fed. Cir. (N.J.), 2007).......... 17

Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730 (9th Cir. (Wash.), 1979) .......... 18

Von Grabe v. Sprint PCS, 312 F.Supp.2d 1285 (S.D. Cal., 2003) .......... 16

Ward v. Follett Corp.,
158 F.R.D. 645 (N.D.Cal., 1994) .......... 23

Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,
433 F.3d 1199 (9th Cir. (Cal.), 2006) .......... 11

Z-Line Designs, Inc. v. Bell'O Intern., LLC,
218 F.R.D. 663 (N.D. Cal., 2003) .......... 23, 24

**STATUTES:**

Cal. Civ. Proc. Code § 410.10.......... 7

15 U.S.C. § 114 .......... 6

15 U.S.C. § 1125(a) .......... 6

28 U.S.C. § 2201(a) .......... 16

**RULES:**

Fed. R. Civ. P. 12(b)(1) .......... 1, 16, 17

Fed. R. Civ. P. 12(b)(2) .......... 1, 2, 7

## NOTICE OF MOTION AND MOTION

Please take notice that Defendants Apex Stores, LLC ("Apex Stores"), Apex, LLC ("Apex, LLC"), and Apex At Home, LLC ("Apex At Home"), by and through their attorneys hereby move to dismiss 24 Hour Fitness USA Inc.'s ("24 Hour Fitness") complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2). This Motion is scheduled for a hearing on September 9, 2008, at 1:00 p.m., in Courtroom 3 of the above-captioned court.

## CONCISE STATEMENT OF RELIEF SOUGHT

Defendants seek a complete dismissal of 24 Hour Fitness' First Amended Complaint based upon a lack of personal and subject matter jurisdiction.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. SUMMARY OF ARGUMENT

Shopping for a forum that would maximize its leverage in discussions concerning the parties' respective uses of the same "Apex" marks, 24 Hour Fitness filed an anticipatory suit against Apex Stores on March 27, 2008, asking for a declaratory judgment that it does not infringe Apex Stores' federal trademark registrations ("Original Complaint"). Plaintiff then took no action to serve or otherwise pursue its lawsuit for more than six weeks, during which it purported to engage in negotiations with the Defendants' counsel for a possible shared use of the "Apex" marks. But Plaintiff refused to discuss any specific limitations on its use of those marks and the negotiations came to a standstill. Only after Apex, LLC and Apex At Home filed and served a lawsuit in the Federal District Court for the District of Rhode Island, did the Plaintiff finally serve its Complaint. 24 Hour Fitness then filed its First Amended Complaint, adding defendants Apex, LLC and Apex At Home.

Apex, LLC and Apex Stores now move to dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2), because they lack sufficient contacts with California to justify the

assertion of personal jurisdiction in this forum. All three Defendants also move to dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1), as there was no legitimate "case or controversy" between the parties at the time 24 Hour Fitness filed its Original Complaint. Throughout the negotiations between the parties, Defendants' counsel never explicitly or implicitly threatened to file an action against 24 Hour Fitness. To the contrary, Defendants' counsel sought to resolve the issue of joint use of the Apex marks amicably and expressed Defendants' openness to settle the issue. In addition, this Court should dismiss 24 Hour Fitness' action against Apex Stores for lack of subject matter jurisdiction, because that company no longer owns the trademarks at issue, so it no longer has any stake in the outcome of this controversy.

Lastly, even if this Court were to have jurisdiction over the First Amended Complaint, it should not exercise that jurisdiction and instead allow for resolution of Apex, LLC's and Apex At Home's federal infringement claims in the District of Rhode Island, where their common law infringement claims, federal and state unfair competition claims and claim to cancel 24 Hour Fitness' trademark registrations will proceed in any event.[1]

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. The Parties

Apex Stores, Apex At Home and Apex, LLC are all Rhode Island limited liability companies with principal places of business in Pawtucket, Rhode Island. (Decl. of Andrew A. Gates ("Gates Decl.") ¶¶¶ 2, 14, 25). While affiliates, they are separate entities that maintain separate books and records, separate bank accounts and do not commingle assets or liabilities. (*Id.* ¶¶ 28-29).

Founded on June 25, 1999 Apex Stores operated a retail service business, including operation of an internet retail store, until July 2001. (*Id.* ¶ 4). Since that time, Apex Stores has existed primarily as a holding company to maintain ownership of trademark registrations and

[1] Pursuant to this Court's Standing Civil Order, ¶ 5, Defendants certify they conferred with Plaintiff via telephone and e-mail in attempts to resolve the issues in this motion prior to filing.

common law trademark rights to certain "Apex" marks. (*Id.* ¶ 5). On April 30 and May 6, 2008, Apex Stores transferred all of those trademark rights to Apex, LLC, which already held ownership of certain other trademark rights. (*Id.* ¶ 6).

Formed on March 20, 2004, Apex, LLC was formed to be a holding company, taking ownership of many federal, state and common law trademark rights utilized by operating entities such as Apex At Home and other affiliates. (*Id.* ¶ 17). Some of those trademarks were transferred at that time, and the remaining "Apex" marks still held by Apex Stores were transferred to Apex, LLC on April 30 and May 6, 2008. (*Id.* ¶ 6).

Formed on June 12, 2001, Apex At Home provides retail services, and has owned and operated an internet retail store at the domain name apexstores.com since July 1, 2001. (*Id.* ¶ 25).

Since at least as early as 1942, Apex At Home, its predecessors and affiliates have consistently provided and continue to provide retail services. (*Id.* ¶ 30). Over the years, they expanded these services to include without limitation, the operation of retail department stores, specialty concept stores, mail order operations and online retail operations. (*Id.* ¶ 31). Since at least as early as the 1960s, their retail services have included a wide variety of general merchandise and services, including without limitation sporting goods, athletic apparel, athletic footwear, athletic equipment, fitness equipment, various food items and products, health and beauty products, related fitness accessories and a wide variety of other related and unrelated items. (*Id.* ¶ 32).

Apex, LLC and Apex At Home are the owners of a family of common law and registered Apex trademarks, which have been in continuous use since 1942 ("Apex") and 1996 ("Apex Online" and "Apex Stores") in connection with various retail store, mail order purchase and computerized online retail services. (*Id.* ¶ 33).

Founded in 1983, Plaintiff 24 Hour Fitness operates a chain of health and fitness clubs and

through its wholly owned subsidiary Apex Fitness, Inc. offers fitness and nutrition programs and products. (First Amended Complaint ¶ 8). 24 Hour Fitness is a corporation organized and existing under the laws of California, with a principal place of business in California. (*Id.* ¶ 8).

**B. Petition for Cancellation of 24 Hour Fitness' Marks**

On December 15, 2006, Apex Stores' U.S. Application Serial No. 78/928,022 for the mark "Apex Companies" was refused by the USPTO based on 24 Hour Fitness' federal registrations. (Declaration of John E. Ottaviani ("Ottaviani Decl.") ¶ 4, Ex. A). On November 1, 2007, Apex Stores filed with the USPTO TTAB a Petition for Cancellation against 24 Hour Fitness requesting cancellation of 24 Hour Fitness' registrations because of the likelihood of confusion with the Apex Marks and the dilution of their distinctive quality. (*Id.* ¶ 5). The same day, Defendants' counsel sent a letter serving 24 Hour Fitness with a copy of the Petition for Cancellation. (*Id.* ¶ 6, Ex. B).

**C. Settlement Negotiations and Procedural History**

On January 14, 2008, Defendants' counsel contacted counsel for 24 Hour Fitness to inquire "whether 24 Hour Fitness would be amenable to settling this dispute by issuing a letter of consent to our client for the registration that was refused by the USPTO." (Ottaviani Decl. ¶ 7). On the same day, 24 Hour Fitness' counsel sent an e-mail stating that she would "follow up with our client regarding its use of the Apex mark for 'distributorship featuring vitamins & fitness programs,' and the possibility of issuing a letter of consent." (*Id.*, Ex. C). On January 29, 2008, counsel for both parties participated in a telephone conference in which Plaintiff's counsel suggested that 24 Hour Fitness was not using the "Apex" mark for retail sales, and further stated that there was a possibility that 24 Hour Fitness would consent to Apex Stores' registration of an "Apex Companies" service mark. (*Id.* ¶ 8). In a February 5, 2008 e-mail, counsel for 24 Hour Fitness inquired again as to whether Apex Stores was interested in the possibility of settling the

proceeding by obtaining a letter of consent for its registration. (*Id.* ¶ 9, Ex. D).

By letter, on March 10, 2008, Apex Stores sought 24 Hour Fitness' agreement to discontinue use of the Apex mark in connection with certain services, after a reasonable phase-out period. (*Id.* ¶ 10, Ex. E). In his March 10th letter, Defendants' counsel expressed concern about the potential for confusion, but emphasized that Apex Stores "hopes we can resolve this issue amicably," and "certainly continues to be open to settlement discussions." (*Id.*). While proposing a possible phase out scenario, Defendants' counsel acknowledged: "you and your client may also have proposals to offer that we have not considered." (*Id.*).

On March 27, 2008, 24 Hour Fitness filed its Original Complaint in this Court seeking a declaratory judgment for non-infringement of trademark and alleging that its use of the Apex marks do not infringe on Apex Stores' marks. In its race to the court, 24 Hour Fitness provided no notice to Defendants' counsel (or Defendants) that it filed the suit, and instead held out that it was still willing to negotiate a potential agreement. (E.g., Original Complaint, Ottaviani Decl. ¶¶ 11, 12, Exs. F, G). Plaintiff did not serve its Original Complaint until May 12, 2008.

By letter, on April 11, 2008, 24 Hour Fitness rejected the suggestion that it phase out use of the "Apex" marks altogether, but represented that "24 Hour Fitness continues to view a consent agreement under which the parties would agree to confine their activities under their Apex marks to their respective business areas as a potentially reasonable resolution of this matter." (*Id.* ¶ 11, Ex. F). On April 24, 2008, counsel for 24 Hour Fitness inquired when Defendants' counsel was going to respond to the April 11th letter. (*Id.* ¶ 12, Ex. G). That day, Defendants' counsel responded that the he was unable to reach his client but will respond to the letter promptly once he does. (*Id.*). On April 29, 2008, Defendants' counsel informed 24 Hour Fitness that Apex Stores is "perfectly happy to have me talk to you, or for the President of our client to talk directly with the President of your client, to discuss a resolution of the issues." (*Id.*).

The next day, on April 30, 2008, counsel for 24 Hour Fitness replied that "we definitely would like to have a discussion among the attorneys first. What we are looking for is to determine whether or not your client is interested in the co-existence terms that we outlined in our last letter." (*Id.*). In that e-mail, counsel for 24 Hour Fitness asked to schedule a conference call to discuss a potential consent agreement. (*Id.*). On May 1, 2008, Defendants' counsel responded by noting that 24 Hour Fitness' counsel had not proposed any specific terms and suggested that he do so before the conference call. (*Id.*). Counsel for both parties agreed on a conference call scheduled for the following business day, on May 5, 2008 to discuss a potential consent agreement. (*Id.*).

During the May 5, 2008 conference call, Plaintiff's counsel was unwilling to provide any specific terms for a possible consent agreement and instead referred to the general concept set forth contained in the April 11, 2008 letter. (*Id.* ¶ 13). Defendants' counsel concluded that the parties' efforts to negotiate a consent agreement were unsuccessful and that 24 Hour Fitness intended to push ahead with a competing retail use of the marks. (*Id.* ¶ 14).

On May 5, 2008, several days prior to receiving service of 24 Hours Fitness' Original Complaint, Defendants Apex, LLC and Apex At Home filed an action in the United States District Court for the District of Rhode Island ("Rhode Island Action") against 24 Hour Fitness for trademark infringement under 15 U.S.C. § 114 and 1125(a), common law trademark infringement, and common law unfair competition, and seeking cancellation of 24 Hour Fitness' "Apex" registrations. On June 3, 2008, 24 Hour Fitness filed a First Amended Complaint ("FAC") adding new defendants Apex, LLC and Apex At Home.

## III. ARGUMENT

### A. THE FIRST AMENDED COMPLAINT AGAINST APEX STORES AND APEX, LLC SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER THOSE DEFENDANTS

**1. The Applicable Standard**

Although Apex Stores and Apex, LLC are the moving parties under Fed. R. Civ. P. 12(b)(2), 24 Hour Fitness bears the burden of demonstrating that personal jurisdiction exists over those defendants. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). In ruling on a motion to dismiss for lack of personal jurisdiction, the Court must consider: (1) whether a state statute potentially confers personal jurisdiction over the non-resident defendant, and (2) whether the exercise of jurisdiction accords with federal constitutional principles of due process. *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240 (9th Cir. 1984) (citing *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285-86 (9th Cir. 1977)). California's long-arm statute, California Civil Procedure Code Section 410.10, authorizes state and federal courts to exercise personal jurisdiction to the full extent permitted by the Constitution, as a result, the jurisdictional analyses under California law and federal due process are the same. *Id.* at 1241. *Schwarzenegger*, 374 F.3d at 801.

The exercise of jurisdiction over non-resident defendants is consistent with the requirements of due process only where the defendants maintain "minimum contacts" with the State of California, such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The *Int'l Shoe* requirements must be met as to each defendant over whom jurisdiction is to be exercised. *Cubbage v. Merchant*, 744 F.2d 665, 668 (9th Cir. 1984) (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)). There are two recognized bases for exercising personal jurisdiction over a non-resident defendant – general and specific.

**2. This Court Lacks General Jurisdiction Over Apex Stores and Apex, LLC**

For general jurisdiction to exist over Apex Stores and Apex, LLC, those defendants must engage in "continuous and systematic general business contacts" that "approximate physical

presence" in the forum State. *Schwarzenegger*, 374 F.3d at 801 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum State to answer for any of its activities anywhere in the world." *Id.* (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)). General jurisdiction does not exist absent a showing of pervasive contacts. *Goldberg v. Cameron*, 482 F.Supp.2d 1136, 1143 (N.D. Cal. 2007). Factors considered in evaluating the extent of contacts include whether the defendant makes sales, solicits or engages in business, designates an agent for service of process, holds a license, or is incorporated in the forum State. *Bancroft & Masters, Inc.*, 223 F.3d at 1086.

General jurisdiction does not exist over Defendants Apex Stores and Apex, LLC here, because they do not have sufficient business contacts in California. Apex Stores and Apex, LLC: 1) are Rhode Island limited liability companies; 2) with principal places of business in Rhode Island; 3) are not registered to do business in California; 4) do not maintain an office in California; 5) do not own property in California; 6) have no employees in California; 7) do not have an agent for service of process in California; 8) do not have any registered agents living in California; 9) have not solicited sales of products or services in California; 10) have not sold any products or services to consumers in California; 11) have not sold or endorsed any print, television, or radio advertisements in California; and 12) do not maintain a passive or interactive website. (Gates Decl. ¶¶¶¶¶¶¶¶ 2, 7-13, and ¶¶¶¶¶¶¶¶ 14, 18-24).

The Ninth Circuit has refused to exercise general jurisdiction over non-resident companies who lack significant business contacts in California. *See Tercica, Inc. v. Insmed Inc.*, 2006 WL 1626930, at *12 (N.D. Cal. Jun. 9, 2006) (no general jurisdiction exists over Virginia corporation with principal place of business in Virginia where the defendant does not have an office, does not

solicit sales, and does not advertise in California). *See also Hilsenrath v. Equity Trust (Jersey) Ltd.*, 2008 WL 728902, at *4 (N.D. Cal. Mar. 17, 2008) ("Bermuda Company that has never conducted business or had property, bank accounts, assets, offices, officers, directors, agents or employees in California…does not have sufficient contacts with California to support jurisdiction over it."); *Rascon v. Checkcare Enterprises*, 2006 WL 2192114, at *2 (N.D. Cal. Aug. 1, 2006) (No general jurisdiction exists over "Kentucky company with its principal place of business in Kentucky [that] . . . has no office or branch in California, does not conduct business in California, and is not registered to do business in California.").

**3. This Court Lacks Specific Jurisdiction Over Apex Stores and Apex, LLC**

For specific jurisdiction to exist over non-residents Apex Stores and Apex, LLC, the cause of action alleged by 24 Hour Fitness must arise out of or relate to their activities within this forum. *Hilsenrath v. Equity Trust (Jersey) Ltd.*, 2008 WL 728902, at *2 (N.D. Cal. Mar. 17, 2008) (citation omitted). Specific jurisdiction is analyzed using a three-prong test: (1) the non-resident defendant must purposefully direct its activities or consummate some transaction with the forum or a resident thereof; or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Id.* (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). Each is a requirement that must be met in order to assert jurisdiction over Apex Stores and Apex, LLC. *Id.* (citing *Insurance Co. of N. Am. v. Marina Salina Cruz,* 649 F.2d 1266, 1270 (9th Cir. 1981)).

The first prong encompasses two distinguishable concepts, "purposeful availment" and "purposeful direction." *Schwarzenegger*, 374 F.3d at 802. Purposeful availment typically applies to causes of action "sounding in contract," while purposeful direction applies to causes of action

"sounding in tort." *Id.* A showing that a defendant "purposefully directed" its conduct toward a forum State "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id.* at 803. Purposeful direction may be established under the "effects test" where the defendant (1) committed an intentional act, (2) expressly aimed at the forum State, (3) causing harm that the defendant knows is likely to be suffered in the forum State. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). "Numerous cases both within and outside this circuit have applied the ["effects"] doctrine to actions for willful copyright infringement or other torts involving intellectual property." *Autodesk, Inc. v. RK Mace Engineering, Inc.*, 2004 WL 603382, at *4 (N.D. Cal. March 11, 2004) (citing *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) and numerous other cases).

The second prong of the specific jurisdiction analysis requires that the claim arise out of or result from the defendant's forum-related activities. *Hilsenrath*, 2008 WL 728902, at *3. A claim arises out of a defendant's conduct if the claim would not have arisen "but for" the defendant's forum-related contacts. *Id.* (citing *Panavision Int'l v. L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998)).

Plaintiff cannot satisfy the two prongs necessary for this Court to exercise specific jurisdiction over Apex Stores and Apex, LLC. Defendants have not purposefully directed any material business activity in California. Their only business agreement that may be said to contact California is a web hosting agreement, executed in Rhode Island and governed by Rhode Island law, that does not involve Apex Stores or Apex, LLC coming into California to obtain or provide services. (Gates Decl. ¶ 7). In any event, that contract has nothing to do with this trademark infringement dispute.

Apex Stores' and Apex, LLC's only contacts concerning their trademarks directed toward the State of California were letters and email communications between their counsel and counsel for 24 Hour Fitness, in an effort to negotiate a potential consent agreement. (*See generally* Ottaviani Decl.). It is well-established that settlement letters alone do not suffice to justify personal jurisdiction. *See e.g., Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1208 (9th Cir. 2006); *Jacobsen v. Katzer*, 2006 WL 3000473, at *5 (N.D. Cal. Oct. 20, 2006); *Dex Products, Inc. v. Houghteling*, 2006 WL 1751903, at *4 (N.D.Cal. Jun. 23, 2006).

There are strong policy reasons to encourage settlement letters and to discourage courts from exercising personal jurisdiction over parties for utilizing them. *See Yahoo! Inc.*, 433 F.3d at 1208 (9th Cir. 2006) ("They are normally used to warn an alleged rights infringer that its conduct, if continued, will be challenged in a legal proceeding, and to facilitate resolution of a dispute without resort to litigation. If the price of sending a cease and desist letter is that the sender thereby subjects itself to jurisdiction in the forum of the alleged rights infringer, the rights holder will be strongly encouraged to file suit in its home forum without attempting first to resolve the dispute informally by means of a letter."). *See also Jacobsen*, 2006 WL 3000473, at *5 ("A cease and desist letter may be viewed as an offer of settlement, and it is neither fair nor efficient to provide a disincentive to settlement by subjecting the sender to personal jurisdiction out of state."); *Dex Products, Inc.*, 2006 WL 1751903, at *4 ("Standards of fairness demand that [defendant] be insulated from personal jurisdiction in a distant foreign forum when its only contacts with that forum were efforts to give proper notice of its patent rights.").

**4. It would be Unreasonable for this Court to Exercise Personal Jurisdiction over Apex Stores and Apex, LLC.**

Even if 24 Hour Fitness could somehow satisfy the first two prongs of the specific jurisdiction analysis, it cannot establish that the exercise of personal jurisdiction over Apex Stores

and Apex, LLC is reasonable. *See Hilsenrath*, 2008 WL 728902, at *3 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985); *Haisten v. Grass Valley Medical Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986)). Seven factors are considered in assessing whether the exercise of jurisdiction over a non-resident defendant is reasonable: (1) the extent of the defendant's purposeful interjection into the forum State's affairs; (2) the burden on the defendant; (3) conflicts of law between the forum State and the defendant's home jurisdiction; (4) the forum State's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Id.* (citing *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995); *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991)).

These factors militate heavily against the exercise of specific jurisdiction over Apex Stores and Apex, LLC. As explained, the purposeful interjection into the affairs of California is tangential, at most, for Apex Stores and non-existent for Apex, LLC. An important consideration is the undue burden that the exercise of jurisdiction here would have on Apex Stores and Apex, LLC when an alternate forum exists that would provide a more efficient resolution of the parties' dispute. It would be unduly burdensome for two Rhode Island companies with no significant business contacts in California to litigate here the question of infringement of trademark rights that will be established by witnesses and documents in Rhode Island. This Court has observed:

> While the Ninth Circuit has noted that the burden of litigating in a foreign forum has become less significant as a result of advances in communication and transportation it has also noted that the law of personal jurisdiction is asymmetrical and where, as here, the defendant has done little to reach out to the forum state, the burden of defending itself in a foreign forum militates against exercising jurisdiction.

*Tercica, Inc.*, 2006 WL 1626930, at *15 (quoting *FDIC v. British-American Ins. Co., Ltd.*, 828 F.2d 1439, 1443 (9th Cir. 1987) (internal quotations omitted)).

Further, given that the District of Rhode Island action is far more comprehensive, raising

all issues in dispute between the parties -- including the issue of 24 Hour Fitness' infringement of Apex, LLC's and Apex At Home's common law trademark rights violation of Rhode Island under competition law and cancellation of 24 Hour Fitness' trademark registrations -- it will be most efficient for the courts and the parties to resolve this infringement issue in that single forum, as opposed to leaving two actions between the same parties pending in two separate courts, as the plaintiff prefers. *See Doe v. Geller*, 533 F.Supp.2d 996, 1009 (N.D. Cal. 2008) ("[t]he most efficient judicial resolution of the controversy weighs against jurisdiction" in California where "the mirror image of [defendant's] copyright infringement claim [was] pending in the [Eastern District of] Pennsylvania.").

Moreover, the State of Rhode Island has a greater interest in adjudicating the dispute than the State of California. 24 Hour Fitness seeks a declaratory judgment that it does not infringe Defendants rights under the Lanham Act arising out of only their federally registered trademarks. *See* First Amended Complaint, ¶¶ 10 and 30(a) ("Defendants Marks" at issue include only the federally registered marks). 24 Hour Fitness has asserted no claims under the law of the State of California. *See id.* at 1009 (the forum state California's interest in adjudicating the dispute weighed against the exercise of personal jurisdiction over defendant where the plaintiff alleged no violation of California law). On the other hand, Apex, LLC and Apex at Home have filed an action in the District of Rhode Island seeking substantive relief under the common law of the State of Rhode Island, in addition to relief under the federal Lanham Act. The State of Rhode Island has a greater interest in adjudicating a dispute that would provide substantive relief to its residents under the common law of the State.

In addition, while 24 Hour Fitness may argue that its interest in convenient and effective relief weighs in its favor because it would be convenient to litigate the dispute in its home forum of California, the Ninth Circuit gives little credence to this factor in its determination of

reasonableness. *See CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004) (quoting *Harris Rutsky*, 328 F.3d at 1133) ("Litigating in one's home forum is obviously most convenient. We have noted, however, that this factor is 'not of paramount importance.'").

Lastly, because there is no conflict of law between California and Rhode Island, that factor is inapplicable to the determination of reasonableness.

**5. Apex At Home's California contacts cannot be imputed to Apex Stores and Apex, LLC**

While Apex At Home does not dispute personal jurisdiction in this forum (due to its use of the "Apex" marks to run an internet retail store available to consumers in California), this does not extend jurisdiction to Apex, LLC or Apex Stores. It is well-established in the Ninth Circuit that the due process requirements for the exercise of personal jurisdiction must be met with respect to each defendant named in the complaint. *Cubbage v. Merchant*, 744 F.2d 665, 668 (9th Cir. 1984) (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)); *Itel FL., Inc. v. Container Land Associates*, 1997 WL 229951, at *3 (N.D. Cal. Apr. 22, 1997). Moreover, for the purposes of personal jurisdiction, the actions of one defendant cannot be attributed to another. *ADO Finance, AG v. McDonnell Douglas Corp.*, 931 F.Supp. 711, 714 (C.D. Cal. 1996) (citing *Rush v. Savchuk*, 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516 (1980)).

Only where an agency or alter ego relationship exists between defendants may the court pierce the corporate veil and impute the contacts of one defendant to exercise personal jurisdiction over the other defendant. *See, e.g.*, *Oncology Therapeutics Network Connection v. Virginia Hematology Oncology PLLC*, 2006 WL 334532, at *14 (N.D.Cal. Feb. 10, 2006) (citing *Harris-Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003)). "Under California law, the party asserting that one company is the alter ego of another must make out a prima facie case comprised of two elements: (1) that there is such unity of interest and ownership that the separate personalities of the two corporations no longer exist and (2) that

failure to disregard the corporation would result in fraud or injustice." *RAE Systems, Inc. v. TSA Systems, Ltd.*, 2005 WL 1513124, at *3 (N.D. Cal. Jun. 24, 2005) (citations omitted). "The trier of fact must consider a wide variety of factors to determine whether both prongs of this test are satisfied." *Id.* (citation omitted). "At the pleading stage, conclusory allegations that a corporate entity is the alter ego of the defendant are insufficient to survive a motion to dismiss." *Id.* (citing *Hockey v. Medhekar*, 30 F.Supp.2d 1209, 1211 n. 1 (N.D. Cal. 1998); *Hokama v. E.F. Hutton & Company, Inc.*, 566 F.Supp. 636, 647 (C.D. Cal. 1983)). "Plaintiff must allege facts that would support a finding that "adher[ing] to that separateness would work an injustice." *Oncology Therapeutics Network Connection*, 2006 WL 334532, at *19 (citation and internal quotation omitted).

Apex At Home, Apex Stores, and Apex, LLC are separate corporate affiliates operating independently of each other. (Gates Decl. ¶¶ 28-29). No agency or alter ego relationship exists amongst the three companies. Notably, the courts routinely limit a finding of an agency or alter ego relationship to companies with parent/subsidiary relationships. Here, while all three Defendants are affiliates, none is a parent or subsidiary of the other. (*Id.*). Even then the court still must find that the parent company exerts a substantial level of control over the affairs of the subsidiary. *See Bright v. Primary Source Media*, 1998 WL 671247, at *6 (N.D. Cal. Sep. 19, 1998) ("[W]here a corporate parent actively approves a corporation's major policy decisions and is involved in the executive operation of the corporation, the Ninth Circuit has held that an agency relationship does not exist for the purpose of establishing personal jurisdiction"); *also Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001) ("The existence of a relationship between a parent company and its subsidiaries is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum.").

California courts do not lightly find an agency or alter ego relationship between separate

corporate affiliates. For example, in *Bright*, this Court did not find an agency relationship between the defendant company and its corporate affiliate and refused to exercise personal jurisdiction over the company in spite of the corporate affiliate's extensive contacts with the State of California. 1998 WL 671247, at *6.

Moreover, the fact that Apex Stores and Apex, LLC share a "common trade name" with Apex At Home is not sufficient for this Court to exercise jurisdiction over the companies. *See Von Grabe v. Sprint PCS*, 312 F.Supp.2d 1285, 1301 (S.D. Cal. 2003) ("As in similar cases involving use of a common trade name, [p]laintiff's subjective interpretation and/or assumption or conclusion, without more, is not sufficient to establish personal jurisdiction over [defendant].").

### B. THIS COURT SHOULD DISMISS 24 HOUR FITNESS' COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The "actual controversy" requirement of the DJA is the same as the "case or controversy" requirement of Article III of the United States Constitution. *Neilmed Products, Inc. v. Med-Systems, Inc.*, 472 F.Supp.2d 1178, 1179-1180 (N.D. Cal. 2007) (citing *American States Ins. Co. v.* Kearns, 15 F.3d 142, 143 (9th Cir.1994)).

Federal courts use a two-part test to determine whether a declaratory judgment is appropriate. *Id.* (citing *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2004)). First, the court must determine if there exists an "actual case or controversy" within the court's jurisdiction. *Id.* at 1180. If so, the court secondarily must decide whether to exercise its jurisdiction. *Id.* Under Fed. R. Civ. P. 12(b)(1) dismissal of a declaratory judgment claim for lack of subject matter jurisdiction is proper where the plaintiff fails to show under "all the circumstances, an actual and imminent injury caused by the defendant that can be redressed by

judicial relief, and that is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *See Bridgelux, Inc. v. Cree, Inc.*, 2007 WL 2022024, at *4 (N.D. Cal. July 9, 2007) (citing *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1338 (2007) which in turn quotes *MedImmune, Inc. v. Genentech, Inc.*, 127 S.Ct. 764, 771 (2007)).

An actual controversy, however, must exist at the time the complaint is filed. *Hideki Electronics, Inc. v. LaCrosse Technology, Ltd.*, 2006 WL 1643534, at *3 (D. Or. Jun. 5, 2006). "Later events may not create jurisdiction where none existed at the time of filing." *Id.* (quoting *GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 483 (Fed. Cir. 1996).

The declaratory judgment plaintiff carries the burden of proving the existence of facts underlying his allegations of the existence of an "actual controversy." *SanDisk Corp. v. Audio MPEG, Inc.*, 2007 WL 30598, at *3 (N.D. Cal. Jan. 3, 2007) (quoting *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 883 (Fed. Cir. 1985)). A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. *Crossbow Technology, Inc. v. YH Technology*, 531 F.Supp.2d 1117, 1119 (N.D.Cal. 2007) (quoting *A-Z Intern. v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003) (internal quotation omitted)).

The district court when ruling on a motion to dismiss under Rule 12(b)(1) need not accept the pleadings as true. *SanDisk Corp.*, 2007 WL 30598, at *3 (citing *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir.1993)). Only uncontroverted factual allegations must be taken as true, while all other facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the district court. *Id.* (alteration omitted) (quoting *Cedars-Sinai Med. Ctr.*, 11 F.3d at 1583-84). The facts giving rise to jurisdiction over a declaratory judgment action "should be found in the complaint." *Id.* (quoting *Int'l Med. Prosthetics Research Assocs., Inc. v. Gore Enter. Holdings, Inc.*, 787 F.2d 572, 576 n. 8 (Fed. Cir. 1986)). A Rule 12(b)(1) motion may either attack the sufficiency of the pleadings to

establish federal jurisdiction, or allege an actual lack of jurisdiction which exists despite the formal sufficiency of the complaint. *Monolithic Power Systems, Inc. v. O2 Micro Intern. Ltd.*, 2007 WL 2318924, at *2 (N.D.Cal. Aug. 13, 2007) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987)).

**1. 24 Hour Fitness cannot establish that an actual controversy existed when it filed its Complaint**

Here, the pleadings and underlying facts establish that 24 Hour Fitness raced to the court and filed a declaratory judgment action for non-infringement as a negotiation tactic and forum shopping maneuver, before a justiciable controversy regarding 24 Hour Fitness' infringement of Apex, LLC's and Apex At Home's trademark rights had arisen. At the time that 24 Hour Fitness hastily filed this action in its home forum, the parties were in the middle of negotiating a possible consent agreement that would address the dual uses of "Apex" marks, but in a way that would insure Apex Stores' application to register its "Apex Companies" mark would be allowed to proceed. Notably, Apex Stores, Apex, LLC and Apex At Home never explicitly or implicitly threatened to file a lawsuit against 24 Hour Fitness before or during their negotiations. In fact, from his very first communication to the Plaintiff, Defendants' counsel consistently and repeatedly conveyed the Defendants' intent to "resolve this issue amicably." Accordingly, the Defendants good faith efforts to reach an agreement with 24 Hour Fitness over the trademarks demonstrate that an actual case or controversy did not exist when 24 Hour Fitness filed this non-infringement action.

By the same token, 24 Hour Fitness' communications in response to Apex Stores' efforts to negotiate a potential consent agreement over a more than six week period, while making no effort to serve its Complaint or otherwise pursue its declaratory judgment action, reveal that no actual case or controversy existed. For instance, Plaintiff's counsel's April 11, 2008 letter -- two

weeks after Plaintiff furtively filed its Original Complaint -- stated that "24 Hour Fitness continues to view a consent agreement under which the parties would agree to confine their activities under their Apex marks to their respective business areas as a potentially reasonable resolution of this matter." (Ottaviani Decl. ¶ 11, Ex. F).

In an analogous case, *Shoom, Inc. v. Electronic Imaging Systems of America, Inc.*, 2006 WL 1529983, at *6 (N.D. Cal. Jun. 1, 2006), the plaintiff filed a non-infringement action seeking a declaratory judgment and invalidation of a patent. This Court found that no actual case or controversy existed because the parties were still engaged in negotiations over the patent. *See id.* ("[A] litigation controversy does not arise until negotiations have broken down.") (quoting *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053 (Fed. Cir. 1995)). The court reasoned that "[t]he Ninth circuit has recognized that banter between parties, short of a threat to file a suit or harassing or threatening to harass the trade…goes far to undercut the requisites of an actual controversy." *Id.* (quoting *Solenoid Devices, Inc. v. Ledex, Inc.*, 375 F.2d 444, 445 (9th Cir. 1967)) (internal quotation omitted).

Here, the letters and email from the Defendants' counsel reveal a good faith effort to establish an agreement on the parties' respective uses of the Apex marks, not a breakdown of negotiations. (Ottaviani Decl. ¶¶ 10, 12; Exs. E, G). Although Apex Stores had filed a Petition for Cancellation of 24 Hour Fitness' registrations with the TTAB -- it is important to note that the validity of 24 Hour Fitness' registrations is **<u>not</u>** the subject of plaintiff's declaratory judgment action -- the Defendants never suggested that they were considering commencing an infringement action against the Plaintiff. Instead, the communications with 24 Hour Fitness leading up to Plaintiff's filing show that defendants repeatedly emphasize that they were open to a settlement that would involve a consent agreement. (*Id.* ¶¶ 11, 12, Exs. E, G); *Contra Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 158 (9th Cir. 2007) ("[Plaintiff's] perception of threats was more

than reasonable. Not only did [d]efendant allegedly make three concrete threats of infringement litigation, but it did so on the heels of years of unsuccessful and tense settlement negotiations, and after [defendant] initiated seven actions in the TTAB.").

Secondly, the Defendants made no final demand nor did they give 24 Hour Fitness an ultimatum regarding its use of the marks. *Compare E. & J. Gallo Winery v. Pernod Ricard USA, LLC*, 2006 WL 2849830, at *10 (E.D. Cal. Oct. 5, 2006) ("The letter itself was written in unequivocal terms, explicitly stating the laws [defendant] accused [plaintiff] of violating, and imposing strict deadlines for Gallo to comply with the demands."), *with M.D. Beauty, Inc. v. Dennis F. Gross, M.D., P.C.*, 2003 WL 24056263, at *4 (N.D. Cal. Oct. 27, 2003) (a "letter that stated [defendant] would prefer to resolve this matter amicably…." and "ended with an invitation to discuss the matter" did not threaten litigation).

Lastly, 24 Hour Fitness has no basis to assert that the Defendants have a litigious reputation. *Compare Id.* at 9 ("[Plaintiff] knew that defendant has chosen eminent New York patent and trademark counsel, who enjoyed the reputation of being vigorous litigators in trial courts, state and federal….[plaintiff] also justifiably believed that Pernod, had in the past vigorously and aggressively litigated intellectual property cases against its client's competitors in the courts.").

24 Hour Fitness simply cannot show that an actual case or controversy existed at the time it filed its Original Complaint. Rather, Plaintiff engaged in a sharp negotiation tactic by silently racing to capture the home forum should settlement negotiations not proceed as it desired. Accordingly, this Court should dismiss the First Amended Complaint in its entirety, because the Court lacked subject matter jurisdiction when the Original Complaint was filed.

**2. There is no subject matter jurisdiction over the claim for declaratory judgment against Apex Stores, since that Defendant has no legal interest in the outcome of this action**

This Court should dismiss Defendant Apex Stores because it has no legal interest in the outcome of 24 Hour Fitness' declaratory judgment action. "A federal court has no authority to issue a declaratory judgment apart from that authority granted it by the Declaratory Judgment Act, which requires by its terms that an actual controversy exist between the parties before the court." *Gladwell Governmental Services, Inc. v. County of Marin*, 2005 WL 2656964, at *1 (N.D. Cal. Oct. 17, 2005) (citation and internal quotation omitted). "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* (citation omitted). "The rule in federal cases is that an actual controversy must exist at all stages of review and not merely at the time the complaint is filed." *Id.* (citation omitted).

"Whenever an action loses its character as a present live controversy during the course of litigation, federal courts are required to dismiss the action as moot." *Id.* (quoting *Allard v. DeLorean*, 884 F.2d 464, 466 (9th Cir. 1989) (internal quotation omitted). "An action ceases to be a present live controversy and becomes moot once either party is shown to lack a legally cognizable interest in the outcome of the adversary proceeding." *Id.* (citation and internal quotation omitted).

Here, Apex Stores no longer owns the Apex marks at issue in 24 Hour Fitness' declaratory judgment action. (Gates Decl. ¶ 6). Therefore, Apex Stores does not have a legally cognizable interest in the outcome of this action which seeks a judicial declaration that 24 Hour Fitness does not infringe upon the Apex Stores' trademarks. Accordingly, this Court should dismiss Apex Stores from this action. *See id.* at *3 (dismissing counterclaim against counterdefendant because they had no ownership interest in the copyright and therefore no legal stake in the outcome).

**3. Even if this Court determines an actual case or controversy existed, this court should exercise its discretion and dismiss the First Amended Complaint because 24 Hour Fitness filed this anticipatory suit in bad faith as a forum shopping tactic**

Even if an actual case or controversy could be said to have existed when Plaintiff filed its Original Complaint, in the interest of equity the Court should dismiss this declaratory judgment action because 24 Hour Fitness filed this anticipatory suit in bad faith for the sole purpose of forum shopping.

Before proceeding on a suit brought under the Declaratory Judgment Act, if it finds that there is an actual case or controversy, a district court must then decide whether to exercise its discretion. *Freecyclesunnyvale v. Freecycle Network, Inc.*, No. C 06-00324 CW, 2006 WL 870688, at *5 (N.D. Cal. Apr. 4, 2006) (citation omitted). In making this determination, a district court must consider the factors set forth in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942). *Id.* In the Ninth Circuit, "[t]he *Brillhart* factors remain the philosophic touchstone for the district court. The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *Id.* (quoting *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998); citing *Continental Cas. Co. v. Robsac Industries*, 947 F.2d 1367, 1371-73 (9th Cir. 1991)). The district court must "balance concerns of judicial administration, comity, and fairness to the litigants." *Id.* (quoting *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991)). Other relevant considerations include:

> [W]hether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

*Freecyclesunnyvale*, 2006 WL 870688, at *5.

"A court can also decline jurisdiction if it appears that the declaratory relief suit was filed for an improper tactical purpose." *Id.* (citation omitted). "For instance, courts have recognized

that declaratory relief actions are inappropriate when filed merely to improve a bargaining position in ongoing negotiations." *Id.* (citing *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 809 (Fed. Cir. 1996), *overruled in part on other grounds, MedImmune*, --- U.S. ----, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007)).

The "first to file" rule allows a district court to transfer, stay or dismiss an action when a similar complaint has been filed in another federal court. *Z-Line Designs, Inc. v. Bell'O Intern.*, LLC, 218 F.R.D. 663, 665 (N.D. Cal. 2003) (citing *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994); *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 623 (9th Cir. 1991)). "In applying this rule, a court looks at three threshold factors: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues." *Id.*

Even if the threshold factors of the first to file rule are met, "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems." *Id.* (quoting *Alltrade*, 946 F.2d at 627-28). "District courts can, in the exercise of their discretion, dispense with the rule for reasons of equity." *Id.* *Ward*, 158 F.R.D. at 648; *Alltrade*, 946 F.2d at 625-26. "Circumstances under which the first to file rule will not be applied include bad faith, anticipatory suit, and forum shopping." *Id.*

Anticipatory suits are disfavored because they are examples of forum shopping. *Id.* (citation omitted). Further, "[t]he Declaratory Judgment Act is not to be invoked to deprive a plaintiff of his conventional choice of forum and timing, precipitating a disorderly race to the courthouse." *Id.* (quoting *DeFeo v. Procter & Gamble Co.* 831 F.Supp. 776, 778 (N.D. Cal. 1993); *Gribin v. Hammer Galleries*, 793 F.Supp. 233, 234-35 (C.D. Cal. 1992)). "Application of the first to file rule in such situations would thwart settlement negotiations, encouraging intellectual property holders to file suit rather than communicate with an alleged infringer." *Id.*

(citation omitted).

In the interest of equity, this Court should exercise its discretion and decline to entertain 24 Hour Fitness' declaratory judgment action. 24 Hour Fitness filed this anticipatory suit, unbeknownst to the Defendants, while they were attempting to negotiate in good faith a consent agreement to resolve the PTO's refusal to allow registration of a new trademark application by Apex Stores. The sole reason 24 Hour Fitness filed this action was to secure jurisdiction in its home forum, presumably as leverage in the parties' negotiations and because it knew – but Defendants did not – that it intended to expand its use of an identical "Apex" mark into a competitive internet retail store. An analogous case from this Court illustrates how such anticipatory suits should be treated. In *Z-Line Designs, Inc.*, plaintiff's counsel accepted a second deadline extension to discuss with his client an settlement related to possible infringement of defendant's copyrights and trade dress rights. *Id.* at 666. Before the deadline to discuss settlement took place, plaintiff filed a declaratory judgment action for non-infringement. *Id.* After defendant did not hear from the plaintiff and the after the passage of the deadline, defendant filed an infringement action in another federal court. *Id.* The court found that the plaintiff's acceptance of the deadline was a misleading communication that "created a reasonable expectation that the plaintiff would explore settlement rather than litigation." *Id.* Finding the plaintiff's declaratory judgment action to be an anticipatory suit, the court dismissed the complaint and reasoned that:

> Denial of defendant's motion to dismiss in this situation would discourage pre-litigation settlement discussions. At a minimum, such a denial would encourage parties interested in protecting their intellectual property rights to file a complaint prior to attempting settlement. Potential plaintiffs should be encouraged to attempt settlement discussions... prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing before the plaintiff files a complaint.

*Id.* at 666-67 (citations omitted and internal quotations omitted).

Similarly in this case, 24 Hour Fitness secretly filed a declaratory judgment action while it

and counsel for the Defendants were negotiating a potential consent agreement. Then, 24 Hour Fitness quietly sat on its Complaint without serving it on Apex Stores (the only named defendant at that time) for over six weeks, not serving it until May 8, 2008, **after** Apex, LLC and Apex At Home filed and served their lawsuit in the District of Rhode Island. Until May 8, 2008, 24 Hour Fitness gave the Defendants the impression that it was willing to work towards an agreement for concurrent use of the marks.

In short, 24 Hour Fitness' surreptitious effort to grab home forum in the event of a lawsuit, while purporting to negotiate an agreement with Defendants' counsel is an example of litigation gamesmanship that should not be countenanced. This Court should dismiss this anticipatory declaratory judgment action and allow Apex, LLC's and Apex At Home's infringement claims to be resolved in the action pending in the District of Rhode Island.

APEX STORES, LLC; APEX, LLC; APEX AT HOME, LLC

Dated: June 30, 2008

By: */s/ Nathaniel Bruno*

Neil A. Smith (SBN 63777)
Nathaniel Bruno (SBN 228118)
Sheppard Mullin Richter & Hampton, LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone: (415) 434-9100
Facsimile: (415) 434-3947
*Attorneys for Defendants*